# Louisville & Nashville R. R. Co. v. Bogue.

## Injury to Person on Track.

(Decided April 11, 1912.   Rehearing denied April 25, 1912.
58 South. 393.)

1. *Master and Servant; Relation; Death; Pleading.*—Where, whether a person was a licensee or trespasser, was an important issue, the action being for the death of a servant while walking along the track, it was proper for plaintiff to allege that her intestate was on the track at the invitation and under the direction of defendant's station agent or section foreman.

2. *Same; Injury to Servant.*—Where a complaint alleged that defendant's servants negligently ran its train over intestate after discovering his peril on the track, such general averment of necessity included a charge that the servants in charge of the train could have stopped it in time to have avoided killing the intestate, and the count was not demurrable for failure to contain such specific allegation.

3. *Same; Evidence.*—Where the action was for the death of plaintiff's intestate, struck by a train while walking along the track of defendant for the purpose of lighting the switch lamps, it was competent to show that the route taken by intestate while lighting the lamps (along the ends of the cross ties of the main track) was the usual route followed by those who discharged this duty, not to rebut the implication of contributory negligence, but as tending to show that the intestate kept within the scope of his license, and did not become a trespasser by exceeding it.

4. *Same.*—Whether or not the train had been negligently handled was but a conclusion, and invaded the province of the jury.

5. *Appeal and Error; Harmless Error; Evidence.*—Evidence as to how intestate did the work in lighting the switch lamps, was not prejudicial, although immaterial.

6. *Same.*—The fact that there was a summer hotel opposite the south switch was irrelevant as evidence in an action for the death of a pedestrian walking along the track, but could not be said to be prejudicial.

7. *Same; Right to Allege.*—A defendant cannot be estopped to object to an instruction erroneously limiting plaintiff's recovery to compensatory damages by requesting and having given a written instruction that in no event could plaintiff recover punitive damages.

8. *Death; Damages; Nature and Character.*—It was error to limit plaintiff's recovery to compensatory damages in an action for the death of a minor under section 2485, Code 1907, as the expression

[Louisville & Nashville R. R. Co. v. Bogue.]

"such damages as the jury may assess" in that section and in section 2486, has reference to punitive as distinguished from compensatory damages.

9. *Trial; Objection to Evidence; Time.*—Where no objection is interposed to a question when asked, it is not error to overrule a motion to exclude a responsive answer.

10. *Evidence; Expert.*—Where an expert locomotive engineer was asked as to the duty of a fireman on seeing a person on the track or on the end of the cross-ties ahead of the engine, and answered that it was his duty to warn the engineer that he was approaching danger, or that someone was in danger, neither the question nor the answer was objectionable on the grounds that no predicate had been laid.

11. *Same; Hypothetical Question.*—Where some of the evidence showed that intestate was walking along the track in front of the approaching train, and was run down while so walking, apparently unconscious of his danger, and it also appeared that the engineer saw intestate about 100 yards in front of the train, though he claimed that he was not in a place of danger, a question hypothesizing that the engineer discovered intestate on the ends of the ties with something in his hand, and with his back to the train, apparently unconscious of its approach, and seeking the duty of the engineer under such circumstances, was not objectionable as not based on the evidence.

12. *Charge of Court; Explanation.*—Where the court had charged that if any one of the jury was reasonably satisfied from the evidence that defendant was not guilty of negligence as charged in any one of the counts of complaint, the jury could not find for plaintiff, it was not error to add the further statement by way of explanation that it did not mean that the jury must find for defendant, but merely that they must all agree on a verdict in order to render one.

13. *Same; Construction.*—Portions of the oral charge must be construed in connection with the whole, and if when construed, they are correct, no error will intervene.

14. *Witnesses; Examination; Cross.*—Where defendant's section foreman testified as to intestate's capacity, intelligence and efficiency, in attending to the switch lamps, the question to him on cross-examination as to whether intestate had sufficient judgment and experience to know that to jump on trains was wrong and dangerous, was properly excluded, as such question had no tendency to test or impugn the testimony in chief, and where it had not been shown that intestate jumped on the train in question at the time.

15. *Same; Knowledge; Evidence.*—As showing a witness's familiarity with the locality where the fatality occurred, and his knowledge of conditions, it was competent to permit him to state that he had sometimes lighted the switch lamps.

(McClellan, J., dissents.)

APPEAL from Cullman Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by Julia A. Bogue as administratrix against the Louisville & Nashville Railroad Company, for damage for the death of her intestate caused by being struck by one of defendant's trains while walking along such roadway, lighting its switch lamps. Judgment for plaintiff and defendant appeals. Reversed and remanded.

GEORGE H. PARKER, and EYSTER & EYSTER, for appellant. The court erred in permitting it to be shown that it was customary for people to travel on the track at the place where the injury occurred.—*L. & N. v. Young,* 52 South. 213; *Glass v. M. & C. R. R. Co.,* 94 Ala. 586; *M. & C. R. R. Co. v. Womack,* 84 Ala. 149. On these same authorities, the court erred as to the questions presented in assignments 15 and 16. Assignment 17 should be sustained.—*B. & A. R. R. Co. v. Matthewson,* 52 South. 49. A trainman has a right to presume intestate would continue in a place of safety and not imperil himself.—*B. R. & E. Co. v. Bowers,* 110 Ala. 328. Charge 9 should have been given.—*B. R. & E. Co. v. Bowers, supra; Schneider v. Mobile L. & R. Co.,* 146 Ala. 344. Charge 29 should have been given.—*Long v. Gill,* 80 Ala. 411. Charge 36 should have been given.—*Pos. Tel. Co. v. Hulsey,* 132 Ala. 459; *L. & N. v. Stutts,* 105 Ala. 362. Charge 60 should have been given.—*L. & N. v. Orr,* 91 Ala. 548. Charge 61 should have been given.—*C. R. & B. Co. v. Vaughan,* 93 Ala. 210; *T. I. Co. v. Herrin,* 131 Ala. 81; *So. Ry. v. Bush,* 122 Ala. 470. The evidence was so decidedly against the verdict that the court should have set it aside.—*Peters v. So. Ry.,* 135 Ala. 540; *So. Ry. v. Lollar,* 135 Ala. 375; *B. R. L. & P. Co. v. Owen,* 135 Ala. 154; *Peoples S. B. & T. Co. v. Keith,* 136 Ala. 469.

J. B. Brown, for appellee. There was no departure. —*L. & N. v. Robinson*, 141 Ala. 327. It sufficiently appeared that intestate was on the premises by invitation. —*A. G. S. v. Godfrey*, 156 Ala. 219; *B. R. L. & P. Co. v. Williams*, 158 Ala. 387. Under the eighth count, it is immaterial whether he is a trespasser or not, as the defendant owed him a duty after discovering his peril.— *L. & N. v. Young*, 153 Ala. 233; *So. Ry. v. Drake*, 51 South. 996. The court will not be put in error for overruling motion to exclude evidence where no objection was interposed to the question. A witness may not be permitted to substitute his judgment for that of the jury.—*B. Ry. Co. v. Martin*, 148 Ala. 8; *Tanner v. L. & N.*, 60 Ala. 621. The question as to whether or not intestate was going to his work by the usual route of travel was pertinent and bore directly on one of the important issues.—*B. R. L. & P. Co. v. Williams*, 158 Ala. 387; *So. Ry. Co. v. Shipp*, 53 South. 152. There was evidence to support the hypothetical question, and the engineer was shown to be an expert.—*So. Ry. Co. v. Shelton*, 136 Ala. 191; *So. Ry. v. Bush*, 122 Ala. 470; *Carlisle v. A. G. S.*, 52 South. 342. The oral charge must be construed as a whole.—*Decatur Co. v. Mehaffey*, 128 Ala. 242. In any event, the oral charge was correct. —*So. Ry. Co. v. Shelton, supra; Carlisle v. A. G. S., supra*. It is insisted that appellant should not be allowed to take advantage of the ruling of the court as to the measure of damages which it itself invoked so as to put the court in error thereon.—*Travis v. Sloss-S. S. & I. Co.*, 162 Ala. 605. Misleading charges will not work a reversal.—*L. & N. v. Wilson*, 162 Ala. 603. Under the evidence the question of negligence was one for the jury. —*So. Ry. v. Shelton, supra; Carlisle v. A. G. S., supra; So. Ry. v. Forrester*, 158 Ala. 483. The court could not charge as a matter of law that the engineer had the

right to assume that an intestate would remove himself from the position of peril.—*B. R. L. & P. Co. v. Smith,* 121 Ala. 355; *Schneider v. Mobile Co.,* 146 Ala. 347; *Rundle v. B. R. L. & P. Co.,* 158 Ala. 362. It is a familiar principle of law that the verdict will not be disturbed, nor the action of the trial court in refusing a new trial reversed unless the evidence palpably fails to support the verdict.—*Lyon v. McGlawn,* 156 Ala. 463. The question of contributory negligence was for the jury.—*Tutwiler C. Co. v. Enslen,* 129 Ala. 346; *Chambers v. Milner C. Co.,* 143 Ala. 255.

SOMERVILLE, J.—Plaintiff's intestate, a boy 11 years of age, was killed by defendant's freight train at Holmes Gap, Cullman county, in June, 1907.

The original complaint filed in June, 1908, was framed under the Employer's Liability Act (Code 1907, § 3910), and alleged that intestate was in the service of defendant, and was engaged in the discharge of his duty at the time he was killed. Seven additional counts were added by way of amendment in March, 1910, and demurrers were sustained to all the counts except 4, 5, 6, 7, and 8. Of these counts 4 and 6 were eliminated by charge of the court, the final issues being on counts 5, 7, and 8, which the court properly construed as framed under Code, § 2485, and not under the Employer's Liability Act.

Count 5 alleges that intestate was lawfully walking along or near defendant's railroad track in said village by the invitation of one Lawrence, who was defendant's section foreman, and whose duty it was to superintend and see to the lighting of the switch lights at defendant's station, and who had previously procured or requested intestate to light them, and that, while intestate was so engaged, and was proceeding along or near

said track, in the usual route followed by those who performed such service, defendant's servants so negligently managed its train, which they were then engaged in running, that the engine or a car thereto attached was caused to run against or over intestate, thereby proximately causing his death.

Count 7 is, in substance, the same as count 5, except that intestate is alleged to have been acting under the instructions of one Huie, who was defendant's station agent at Holmes Gap.

Count 8 alleges simply that intestate was walking along or near defendant's track in the village of Holmes Gap in a position of peril, and that defendant's servants negligently ran said train over or upon him after discovering his peril.

Defendant pleaded the general issue, contributory negligence, and the statute of limitations of two years; the theory of the last plea being that the amendment was as to counts 5 to 10, inclusive, a departure from the original cause of action.

One of plaintiff's witnesses testified that he saw intestate walking along down the main track on the ends of the ties, and saw the train approach him from the rear; that the whistle was not blowing and the bell not ringing, but the engine was making a great deal of noise, and had just previously blown for the station; and that the front of the engine or the steam chest struck intestate down. A number of defendant's witnesses, on the other hand, testify that intestate was walking a disance of three or four feet from the main track, and that at the time he went under the wheels of the train the engine and several cars had already safely passed by him; the general consensus being that the intestate vlountarily moved toward the passing train for some purpose of his own. The train was moving slowly

—about eight miles an hour—and intestate was found lying with his body outside the rails, and with one leg, nearly severed at the hip, lying inside.

The engineer who was running the engine, testifying as a witness for plaintiff, stated that he first saw intestate about 300 yards away, walking by the side of the track, and that he last saw him about 100 yards away; that he was walking along 6 or 7 feet from the main track where he was safe from danger, and that he gave no indication of any intention to go on the track; and that witness did not blow an alarm, nor make any effort to stop or slacken speed.

The fireman was during that time engaged in firing the engine, and did not see intestate at all. Intestate was of sufficient age and capacity to attend to lighting the lamps, in which he had had much experience, and had for several months performed the task efficiently and satisfactorily, and had done so while trains were passing both ways.

The complaint does not allege that intestate was an employee of defendant, but that he was personally authorized by the section foreman to attend to the switch lamps.

1. Whether plaintiff's intestate was a licensee or a trespasser on and about defendant's track at the time he was killed was an important issue in the case, and it was, of course, proper for plaintiff to allege in her complaint that intestate's presence and actions there were at the invitation or under the directions of the station agent or section foreman, in order to show that he was not a trespasser. Hence the motions to strike out those parts of counts 5 and 7 were properly overruled.

2. Count 8 is founded on the assumption that, although intestate was a trespasser·on or near defendant's track, yet defendant's servants negligently ran its train

over him after discovering his peril; thus invoking the doctrine of subsequent negligence. This general averment of negligence necessarily includes the charge that the train could have been stopped in time to avoid killing intestate, and the count was not subject to demurrer for want of such specific averment.—*So. Ry. Co. v. Stewart,* 153 Ala. 133, 45 South. 51.

3. Plaintiff, who was intestate's mother, testified that on a former occasion she went with intestate when he was lighting the switch lamps and described how he did it. We think this was wholly immaterial, but it was plainly not prejudicial to defendant; nor does it appear that any objection was made to the question calling for this statement. Hence there was no error in overruling defendant's motion to exclude it.

4. It was clearly improper for the engineer to state "whether or not the train was being negligently handled." The question called for the conclusion of the witness, and invaded the province of both court and jury. The court properly excluded it.

5. It was proper for plaintiff to show that the route followed by intestate while lighting the lamps—that is, along the ends of the cross-ties of the main track—was the usual route followed by those who discharged that duty, not to rebut the implication of contributory negligence, but to show that intestate kept within the scope of his license, and did not by exceeding it become a trespasser. Defendant's objection to this testimony was not well taken.

6. Plaintiff's witness Lawrence, defendant's section foreman, testified to the capacity, intelligence, and efficiency of intestate in attending to the lighting of the lamps. On cross-examination he was asked by defendant if intestate was not of sufficient judgment, intelligence, capacity, and experience to know that to jump on

trains at that time was wrong and dangerous. This question was not calculated to test or impugn the witness' testimony in chief, and it was objectionable in improperly assuming as a proven fact that intestate jumped on the train at the time in question. There was no error in its exclusion.

7. There was no objection to allowing plaintiff's witness Brown to state that he had sometimes performed the duty of lighting the switch lamps, since it served to show his familiarity with the locality, and could not possibly prejudice defendant in any case.

8. This witness was allowed to state that there was a summer hotel opposite to the south switch. We are at a loss to discover any relevancy between this fact and the issues of this case. But it is too irrelevant and too innocuous to be complained of by defendant.

9. Plaintiff asked the witness Casey, an expert locomotive engineer, this question: "Suppose he [the fireman] was at his post there, and he saw a person on the track, on the end of the ties ahead of the engine, what was his business and duties in reference to that person?" He answered it would "be his duty to warn the engineer that he was approaching danger, or somebody was in danger." Defendant objected to both question and answer on the ground that "no predicate had been laid." The answer was doubtless objectionable as stating a mere conclusion of the witness; but, assuming that the objection was intended to go to the qualifications of the witness, it was not well taken, and was wholly inapt.

10. On cross-examination plaintiff asked defendant's witness Stone, who was conductor of the train in question: "Suppose this engineer was coming along here (referring to the diagram), and the engineer discovered this little boy on the end of the ties, with something in his hand, with his back to the train, and apparently

unconscious of the approach of the train, what is the duty of the engineer?" He answered that, "if he was on the track, it is the duty of the engineer to blow the signal alarm." Defendant objected to both question and answer on the ground that they were hypothetical, and not based on the evidence in the case, which objections were overruled.

The testimony of plaintiff's witness Blankenship, however incredible it may seem, had some tendency to show that intestate was walking on the end of the ties in front of the approaching train, and that he was run down while so walking, apparently unconscious of his danger. It appears, also, that the engineer saw intestate about 100 yards in front of the train, though he says he was not in a place of danger. Hence we cannot clearly see that the hypothesis stated was without any support in the evidence, or that the court was in error in permitting the question.

11. In its charge to the jury ex mero motu the trial court said: "If you should find for the plaintiff, in assessing the plaintiff's measure of damages in this case her measure of damages would be such damages as the jury may assess, having in view all the circumstances connected with this case, and such amount, gentlemen, as would be in their nature compensatory to the plaintiff, for the intestate's estate, for the injury sustained." And, further: "You can assess such sum of damages, if you find for the plaintiff, as you may see fit, as reasonably prudent men, having in view the circumstances surrounding this case, and having in view what is necessary to compensate the estate of this intestate for the injury thus suffered, not exceeding $20,000." These portions of the charge were duly excepted to by defendant.

Counts 5, 7, and 8, added by amendment to the original complaint, and upon which alone the case was really tried, are clearly not framed under the Employers' Liability Act, and must be regarded as stating causes of action under Code, § 2485, which gives to the father, mother, or personal representative contingently a right of action for the unlawful or negligent killing of a minor child. In a very clear and convincing analysis of this section and its congener—section 2486—appended thereto by the code commissioner in the Code of 1907, it is quite satisfactorily shown that, under each section, the damages authorized to be recovered are punitive, and not compensatory. Each section relates to homicides and confers a right of action unknown to the common law, and the language of each is identical with respect to the nature of the damages that may be recovered. "Such damages as the jury may assess" cannot by any rational rule of construction mean punitive damages in the one, and compensatory damages in the other; and to so hold would in our opinion be simply an act of judicial legislation. The entire language of the statute follows as closely as possible the language of the older statute (section 2486) for the prevention of homicides; and the damages authorized under that statute have always been held to be punitive only.—See cases cited thereunder in 2 Code, p. 15.

Some confusion has arisen on the subject as the result of a supposed dictum to that effect in *Williams v. S. & N. R. R. Co.*, 91 Ala. 635, 9 South. 77, where it was said that "the damages recoverable by the father are compensatory and not punitive.—*L. & N. R. R. Co. v. Orr*, 91 Ala. 548, 8 South. 363, and authorities cited." It does not appear that the question was presented by the record, and it is quite certain from an inspection of the whole case that the learned justice who wrote the opin-

ion did not intend this brief statement as a construction of section 2588 of the Code of 1886, now section 2485, for the authorities referred to relate directly and exclusively to the Employers' Liability Act and to its construction in this regard; and perhaps the writer had in mind, also, the common-law limitations upon a father's recovery for injuries to his minor child. This dictum, if it may be so called, was repeated obiter in *L. & N. R. R. Co. v. Robinson,* 141 Ala. 328, 37 South. 431, although what seems to be a dictum contra may be found in *Bube v. B. R. L. & P. Co.,* 140 Ala. 276, 37 South. 285, 103 Am. St. Rep. 33. It is evident, therefore, that there has been no authoritative construction of section 2485 upon this point, even as it was framed prior to the Code of 1907. As now reconstructed in the new Code, it is evidently designed to furnish a complete system for all actions for the death of a minor child, other than those brought under the Employers' Liability Act. Defendant's exceptions to the quoted extracts from the oral charge of the court directly present for our decision the proper constructon of section 2485 of the Code with respect to the nature and measure of the damages recoverable thereunder; and we hold that such damages are punitive, not compensatory, and differ in no respect from the damages recoverable under section 2586, as established by former decisions of this court. These portions of the oral charge were therefore erronous, and must work a reversal of the judgment.

As we read the brief of appellant's counsel, he admits the correctness of the construction of the statute as above announced, but insists that the trial court was misled in the matter by the arguments and theories of defendant's counsel, and that defendant is thereby estopped from taking advantage of the error. It is a sufficient answer to say that the record informs us only

[Louisville & Nashville R. R. Co. v. Bogue.]

that defendant specifically objected and excepted to the erroneous language in question, and we cannot go outside of the record for information on this subject. Nor can it make any difference that, as contended by plaintiff's counsel, the trial proceeded on the theory that the case was under the homicide act (section 2486), for the rule as to damages would have been the same in any event.

Nor, again, is the defendant estopped by the fact that the court afterwards gave at defendant's request in writing a charge that "in no event can plaintiff recover punitive damages in this case." It was the right, and, indeed, the duty, of defendant, after unsuccessfully objecting to the oral charge, to acquiesce in that ruling of the court so far as the jury trial was concerned, and it had the right undoubtedly to protect itself within the operation of that ruling by requesting appropriate charges in explanation or limitation without the implication of a withdrawal or waiver of the original objection. If the record showed that defendant itself in any way instigated the obnoxious charge, the result might, of course, be different.

12. At the instance of defendant, the court charged the jury in writing that, "if any one of your number is reasonably satisfied from the evidence that the defendant was not guilty of negligence as charged in any one of the counts of the complaint, you cannot find for the plaintiff." At the instance of plaintiff, the court then charged the jury in writing that "this does not mean that you must find for the defendant, but merely means that you must all agree upon a verdict should you render one." There was no error in this explanation of the former charge.

13. Several other portions of the oral charge standing alone would be objectionable; but, construed in connec-

tion with the entire charge, as they must always be, we think the jury were not misled as to the law of the case in those particulars.

14. As the case must again be submitted to a jury, we deem it inexpedient to now consider whether the trial court should have set aside the verdict on motion of defendant for a new trial.

15. We have examined with care all of the numerous written charges refused to defendant. A detailed discussion of them would contribute nothing of value to the law, and it must suffice to say that there was no error in refusing to give any of them. Many of them are dispensed with by the ruling that the damages recoverable are punitive. Some are fully covered by other written charges given for defendant. Some give undue prominence to particular facts. A great many improperly charge the jury to find particular facts (see *Decatur, etc., Co. v. Newsom,* 178 Ala. ......, 59 South. 615), and some are patently erroneous.

For the error pointed out, the judgment must be reversed.

Reversed and remanded.

Dowdell, C. J., and Simpson, Anderson, Mayfield, and Sayre, JJ., concur. McClellan, J., states his views on the point of reversal in a separate opinion.

McClellan, J.—(dissenting.)—To my mind, there is great doubt of the correctness of the result above announced by my Brothers. Count 5, notwithstanding some of its allegations assume, in a general way, to describe Claude Bogue's relation to the defendant's way as that of a licensee thereupon, would seem, by the averment of facts, to state a relation of master and servant between Bogue and defendant when the former was

killed.—See *Tenn. C. I. & R. R. Co. v. Hayes,* 97 Ala. 201, 205-206, 12 South. 98; *Ga. Pac. Ry. Co. v. Propst,* 83 Ala. 518, 3 South. 764. That he was not an independent contractor appears clear.—*Harris v. McNamara,* 97 Ala. 181, 12 South. 103; *Drennen v. Smith,* 115 Ala. 396, 22 South. 442. If he was upon the way in authorized performance of service for the defendant, as a servant, he was not, of course, a mere licensee or within the class generally described as upon premises by invitation.

If count 5 describes, by allegations of fact, a relation of master and servant when the injury was suffered by Bogue, the count, it would seem, would fall under the Liability Act.—Subdivision 5, Code, §§ 3910, 2912. Its sufficiency, as against demurrer, is, of course, a different matter. If that count is under the Liability Act, a consequence is that compensatory damages were recoverable if the evidence sustained the allegations of the count. If so, it does not readily appear that the trial court erred to reversal in instructing the jury that compensatory damages alone were awardable; whereas, if the entire complaint was under Code, §§ 2485, 2486, exemplary damages only were recoverable.—*L. & N. R. R. Co. v. Street,* 164 Ala. 155, 51 South. 306, 20 Ann. Cas. 877; *Randle v. B. R. L. & P. Co.,* 169 Ala. 314, 322, 53 South. 918.

At the instance of the defendant, the court gave this special charge to the jury: "(28) In this case the law presumes that Claude Bogue was a competent employee to render the service in which he was engaged." At the instance of the defendant the court gave this special charge: "(66) In no event can plaintiff recover punitive damages in this case." It may well be that the giving of these special instructions committed the defendant to the theory they clearly evidence; and hence forbids the defendant's insistence in this court upon an in-

consistent (therewith) theory with the view of a reversal.

In any event, I am unable to see how this appeal can be disposed of, both on the pleadings and on the evidence, without determining the relation Claude Bogue bore to the defendant when he was killed.