603 So.2d 889 (1992)
S.M. McLEOD, as Administrator of the Estate of Deon McLeod, Deceased
v.
CANNON OIL CORPORATION and Brent Emmett Head.
1901513.
Supreme Court of Alabama.
June 19, 1992.
Rehearing Denied August 7, 1992.
*890 Lanny S. Vines and R. Bradford Wash of Emond & Vines, Birmingham, for appellant S.M. McLeod.
Bibb Allen, LaBella S. Alvis and Deborah Alley Smith of Rives & Peterson, Birmingham, for appellee Cannon Oil Corp.
Steadman S. Shealy, Jr. of Buntin, Cobb & Shealy, P.A., Dothan, and John D. Richardson of Richardson, Daniell, Spear & Upton, Mobile, for appellee Brent Emmett Head.
SHORES, Justice.
The plaintiff, S.M. McLeod (Deon McLeod's father), appeals from a judgment entered on a jury verdict for defendant Cannon Oil Corporation in an action brought under the Civil Damages Act, Alabama Code 1975, § 6-5-70, which provides a cause of action for the illegal sale of alcoholic beverages to minors. He also appeals from a judgment entered after a verdict was returned by the jury for defendant Brent Emmett Head in a wrongful death action emanating from the same accident. We affirm in part and reverse in part.
The record reflects that on July 15, 1989, Deon McLeod and several of his male friends were on their way to an outdoor concert being held on the Couch sand pits property in Dale County, Alabama. They stopped at approximately 7:30 p.m. at the Cannon Oil station, where Deon, a minor, purchased beer. The testimony reflects that the Cannon cashier asked McLeod for identification, but that he told her he did not have any. The cashier allowed him to buy the beer anyway.
Deon and his friends went to the concert, but left when it began to rain. They returned to the Cannon Oil station at approximately 8:30 p.m., when Deon purchased more beer. Another cashier was on duty by this time. This cashier testified that, based upon Deon's appearance, he believed that Deon was 25 years old and sold the beer to him without question.
*891 The group went to a McDonald's restaurant and then stopped by Deon's house. They returned to the concert, with Brent Head driving. As they entered the property, their car was behind a slow moving van. The testimony reflects that Head attempted to pass the van and ran the car into a lake. All of the young men except Deon McLeod were able to swim to shore. Deon drowned.
S.M. McLeod brought this action against Cannon Oil Corporation and Brent Head, the driver of the vehicle. Count One contained a wrongful death claim, based on Head's alleged wanton operation of a vehicle. Counts Two and Three alleged violations of the Civil Damages Act by Cannon Oil, based on two separate sales of beer to a minor, Deon McLeod, on July 15, 1989. Count Four, added by amendment, contained a dram shop claim; that claim was voluntarily dismissed at trial.
The case was tried before a jury on February 11, 1991. Both the plaintiff and the defendants moved for directed verdicts. Their motions were denied, and the case was submitted to the jury. The jury returned a special verdict, finding that Cannon Oil's sale of beer to Deon McLeod did not violate the Civil Damages Act, and that Brent Head was not liable for the wrongful death of Deon McLeod.
We first consider whether the trial court erred to reversal in failing to direct a verdict for the plaintiff on the issue of liability under the Civil Damages Act: that is, whether Cannon Oil's failure to require proof of Deon's age before selling beer to him entitled the plaintiff to a directed verdict on the issue of liability under the Civil Damages Act.
The Civil Damages Act provides as follows:
"Either parent of a minor, guardian or a person standing in loco parentis to the minor having neither father nor mother shall have a right of action against any person who unlawfully sells or furnishes spirituous liquors to such minor and may recover such damages as the jury may assess, provided the person selling or furnishing liquor to the minor had knowledge of or was chargeable with notice or knowledge of such minority. Only one action may be commenced for each offense under this section."
§ 6-5-70, Code of Alabama 1975. Thus, in order to establish liability under the Civil Damages Act, a plaintiff must prove that the defendant (1) sold spirituous liquors to a person who was a minor, and (2) was chargeable with notice or knowledge of the minority. Once the plaintiff does that, the burden shifts to the defendant to show that he did everything required by the statute and the regulations to determine whether the purchaser was a minor. If the defendant cannot show that he complied with the statute and the regulations, then the plaintiff is entitled to a directed verdict on the issue of whether the Civil Damages Act was violated.
In the present case, the plaintiff proved that Cannon Oil sold beer to Deon McLeod, a minor, twice on July 15, 1989.[1] This Court has held that beer and wine are included within the definition of "spirituous liquor," as that term is used in the Civil Damages Act. Espey v. Convenience Marketers, Inc., 578 So.2d 1221, 1231 (Ala.1991) (holding limited by McIsaac v. Monte Carlo Club, Inc., 587 So.2d 320 (Ala.1991)). Under the previous holdings of this Court, Cannon Oil, as the seller, was chargeable with notice or knowledge of Deon's minority and had a duty, before selling to someone, to ascertain that the purchaser was not a minor. Laymon v. Braddock, 544 So.2d 900, 903 (Ala.1989); Parker v. Miller Brewing Co., 560 So.2d 1030, 1032 (Ala.1990). Thus, these sales were unlawful and in violation of the Civil Damages Act.
Cannon Oil argues that a seller cannot be "chargeable with notice of knowledge of [the] minority" when the seller concludes from the "totality of the circumstances" that the purchaser has reached majority. The testimony of Cannon's cashiers was that they both thought Deon looked old enough to purchase beer. This is not sufficient. The Alabama Alcoholic Beverage *892 Control Board ("A.B.C. Board") Rules and Regulations, Section 20-X-6-.10, require that the seller, when making a sale, require that the purchaser produce acceptable documentation for the determination of his age:
"1. Pursuant to the Board's responsibility to promote temperance, to suppress the evils of intemperance, and to regulate and control the manufacture, purchase, bottling, sale, distribution, transportation, handling, advertising possession, dispensing, drinking and use of alcoholic, vinous, malt and brewed beverages, it shall be unlawful:
"a. For any person to sell, furnish, give to or purchase for any minor person any malt or brewed beverages, any wine or liquor, or any alcoholic or intoxicating beverage, or to attempt to sell, furnish, give to or purchase for any minor person any of said beverages.
"2. A licensee or his employee may only accept any one or more of the following documents for the purpose of determining the age of a person purchasing or attempting to purchase alcoholic beverages:
"a. A valid driver's license of any state;
"b. United States active-duty military identification;
"c. Passport;
"d. A valid identification card issued by any agency of a state for the purpose of identification along with another form of identification."
The testimony at trial revealed that Cannon Oil did not follow the A.B.C. Board regulations and did not require that Deon produce acceptable documentation for the determination of his age. In fact, he was allowed to make both purchases without producing any identification.
Thus, the plaintiff has proved that Cannon Oil sold spirituous liquors to a minor, without requiring the identification specified by the regulations, and has thereby established a prima facie violation of the Civil Damages Act. We hold that the plaintiff was entitled to a directed verdict on the issue of liability under the statute, and that the trial court erred in denying his motion.
Cannon Oil argues that this holding imposes strict liability upon a seller and that the Civil Damages Act clearly is not a strict liability statute. We disagree. In McIsaac v. Monte Carlo Club, Inc., 587 So.2d 320 (Ala.1991), we held that the Dram Shop Act creates strict liability in case of its violation. In doing so, we noted that "[t]he original legislative Act granting a right of action to a person injured in consequence of the illegal sale or disposition of intoxicating liquor or beverages was adopted by the legislature in 1909."[2]Id. at 323. We explained in McIsaac:
"This Court, commenting on the intent and purpose of the 1909 Act in Webb v. French, 228 Ala. 43, 44-45, 152 So. 215, 216-17 (1934), stated the following: `This act, one of the companion prohibition bills of that special session, covers more than thirty pages, and broadly speaking, may be deemed a prohibition enforcement measure.' Id. (emphasis added [in McIsaac ]). `The object of the early act was to correct the evils resulting from intemperate indulgence in intoxicating liquors, such as impoverishment of families, injuries to other, and the creation of public burdens.' James v. Brewton Motel Management, Inc., 570 So.2d 1225, 1229 (Ala.1990), citing Matalavage v. Sadler, 77 A.D.2d 39, 432 N.Y.S.2d 103 (1980)."
587 So.2d at 323-24. We concluded in McIsaac, based upon these prior interpretations, *893 that the Dram Shop Statute, § 6-5-71, Code of Alabama 1975, is "penal in nature and that its purpose is to punish the owners of taverns who continue to serve customers after they have become intoxicated." Id. at 324. The Civil Damages Act was enacted at about the same time as the Dram Shop Statute; it was originally codified as § 2467 of the 1907 Code of Alabama. Parker v. Miller Brewing Co., 560 So.2d 1030 (Ala.1990); Espey v. Convenience Marketers, supra, at 1222. It may also be interpreted as being penal in nature, with its purpose being to punish any person who unlawfully sells or furnishes spirituous liquors to a minor. Just as the Dram Shop Act creates strict liability in case of its violation, the Civil Damages Act creates strict liability in case of its violation. In this case, the plaintiff established a prima facie case under the Act by producing evidence that Cannon Oil sold beer to a minor. The Act provides that a seller of spirituous liquors sells them at his peril. If the seller suspects the purchaser is a minor, or is chargeable with notice of his minority, he may avoid liability by complying with the provisions of the regulations: requiring proof of age by way of a driver's license, etc. If the purchaser produces a driver's license that appears to be valid and that indicates that the holder is of legal age, the seller escapes liability even if it is later determined that the driver's license is not valid or was not in fact issued to the purchaser.
This legislation was designed to curtail the sale of alcoholic beverages to minors. It places the burden on sellers of such beverages to determine that the purchasers are not minors. If the seller does not carry that burden, the statute permits a jury to assess such damages against the seller as it sees fit. The legislation was passed at a time when there was great concern about the sale of alcoholic beverages, and while the statute is not a model of clarity, the courts have consistently held that the legislature is free to regulate the sale of alcoholic beverages as its wisdom dictates.
We next consider whether the trial court erred to reversal in excluding the testimony of Chief Virgil Dobbs, the Newton police chief, who investigated the accident, as to whether Brent Head's intoxication caused the accident, or whether the verdict of the jury in favor of Brent Head is due to be affirmed. The plaintiff argues that Dobbs should have been allowed to testify as to whether Head's intoxication was the cause of the accident, and he contends that the trial court erred to reversal in not allowing this testimony. Head contends that such a question called for an opinion on the ultimate issue, which is the sole province of the jury, and that the trial court did not err in sustaining an objection to this line of questioning. We agree.
The plaintiff's claim in this case was that Brent Head negligently and wantonly operated an automobile while under the influence of alcohol and thus brought about McLeod's wrongful death. "The function of the jury, which is authorized to draw all reasonable inferences from the evidence, is to resolve controverted factual inferences. George v. Nevett, 462 So.2d 728 (Ala.1984)." Bean v. Craig, 557 So.2d 1249 (Ala.1990). Because, in this instance, there was conflicting evidence from which more than one inference could be drawn, the issue of whether Head was intoxicated and caused the death of McLeod were questions for the jury.
For the reasons stated above, that portion of the judgment based on the verdict in favor of Cannon Oil is due to be reversed and the cause remanded for a new trial. That portion based on the verdict in favor of Brent Head is due to be affirmed. It is unnecessary to address the other issues raised by Cannon Oil.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, ADAMS, KENNEDY and INGRAM, JJ., concur.
ALMON, HOUSTON and STEAGALL, JJ., concur in part and dissent in part.
HOUSTON, Justice (concurring in part and dissenting in part).
Beer is beer, and spirituous liquor is spirituous liquor. In the majority opinion in *894 Espey v. Convenience Marketers, Inc., 578 So.2d 1221 (Ala.1991), beer became spirituous liquor in spite of this Court's holding in Tinker v. State, 90 Ala. 647, 8 So. 855 (1891), and Allred v. State, 89 Ala. 112, 8 So. 56 (1890), that it was not. The majority distinguished Espey from Tinker and Allred, saying:
"[The] definition of `spirituous liquor' [in Tinker and Allred ] was based on licensing and criminal statutes that specifically delineated between various types and classes of `liquors.' The Civil Damages Act is neither a criminal statute nor a licensing provision. Instead, both as it was originally enacted, and as it exists recodified today, the Civil Damages Act is a provision that creates a cause of action."
578 So.2d at 1227-28.
In McIsaac v. Monte Carlo Club, Inc., 587 So.2d 320 (Ala.1991), this Court held that the Dram Shop Act (Ala.Code 1975, § 6-5-71) is penal in nature and that its purpose is to punish. The majority of the Court is now saying that the Civil Damages Act was enacted at about the same time as the Dram Shop Act (my research reveals that the Dram Shop Act was enacted two years after the Civil Damages Act). I assume from the transition in the majority opinion that because the two statutes were enacted at about the same time and because one of them (the Dram Shop Act, Espey) has been interpreted as being penal in nature, the other (the Civil Damages Act) may also be interpreted as being penal in nature, with its purpose to punish any person who unlawfully sells or furnishes spirituous liquors to a minor.
In Espey and in Laymon v. Braddock, 544 So.2d 900 (Ala.1989), the majority of this Court refused to look to the Dram Shop Act for an interpretation of what liquor one was prohibited to sell to a minor under the Civil Damages Act, because the Dram Shop Act used the phrase "any liquor or beverages [that] cause the intoxication of such person," which clearly included beer and wine, and the Civil Damages Act used the phrase "spirituous liquor," which did not include beer or wine until the majority opinion in Espey was released. With the majority opinion in Espey in hand, the Court again looks to the judicial interpretation of the Dram Shop Act for guidance in interpreting the Civil Damages Act.
In my opinion, the Civil Damages Act is penal in nature; its purpose is to punish one who unlawfully sells "spirituous liquor" to a minor; and the Civil Damages Act creates strict liability in case of its violation. This is all the more reason for interpreting the phrase "spirituous liquor" as it was interpreted in other statutes that were penal in nature. Tinker and Allred. Therefore, beer is not "spirituous liquor." If I were the legislature, I would amend the Civil Damages Act by substituting the phrase "any liquor or beverages that cause intoxication" for the phrase "spirituous liquors." However, our constitutional separation of powers compels me to interpret what the legislature has enacted and not to legislate. So let it be written; so let it be done.
STEAGALL, Justice (concurring in part and dissenting in part).
I concur in that portion of the majority opinion regarding the claims against Brent Head. I dissent, however, from the majority's holding that the Civil Damages Act imposes strict liability on the seller of alcoholic beverages and from its holding that the trial court erred in failing to direct a verdict for the plaintiff on the issue of Cannon Oil Corporation's liability under the Civil Damages Act because Cannon Oil Corporation failed to require proof of Deon McLeod's age before selling beer to him.
By imposing strict liability on sellers of alcoholic beverages, the majority holds that a seller of alcoholic beverages is, as a matter of law, chargeable with notice of a purchaser's minority and imposes on the seller a duty to ascertain to a certainty that the purchaser is not a minor. Unlike § 6-5-71, Ala.Code 1975, which this Court in McIsaac v. Monte Carlo Club, Inc., 587 So.2d 320 (Ala.1991), held created strict liability in case of its violation, § 6-5-70 contains the following proviso: "provided the *895 person selling or furnishing liquor to the minor had knowledge of or was chargeable with notice or knowledge of such minority." The majority states that to establish liability under § 6-5-70 the plaintiff "must prove that the defendant (1) sold spirituous liquors to a person who was a minor, and (2) was chargeable with notice or knowledge of the minority."
I would hold that the question of whether Cannon Oil Corporation, under the facts of this case, was chargeable with notice or knowledge of McLeod's minority is a question of fact for the jury. The jury heard the testimony of the clerks who sold the beer to Deon and saw the videotapes of both sales and determined that Cannon Oil Corporation should not be held chargeable with knowledge of Deon's minority. I would affirm the judgment entered on the jury verdict. Accordingly, I dissent from that portion of the opinion regarding the claims against Cannon Oil Corporation.
ALMON, J., concurs.
NOTES
[1] In fact, a videotape of the two sales was shown at the trial.
[2] That act reads as follows: "Every wife, child, parent, or other person who shall be injured in person, or property, or means of support by any intoxicated person, or in consequence of the intoxication of any person shall have a right of action against any person who shall by selling, giving or otherwise disposing of to another, contrary to the provisions of law, any liquors or beverages, cause the intoxication of such person, for all damages actually sustained as well as exemplary damages." § 5674, Ala.Code of 1923, the codification of the act of August 25, 1909, § 8, Ala.Acts 1909, p. 63 (as quoted in Webb v. French, 228 Ala. 43, 44, 152 So. 215, 216 (1934)).