MADDOX, Justice.
The parents of a minor child sued undér the Civil Damages Act, § 6-5-70, Ala.Code 1975, to recover damages against a business for illegally selling intoxicating liquors to their child. The trial court refused to admit the plaintiffs’ evidence of an automobile accident that occurred shortly after the alleged illegal sale and that resulted in the child’s being paralyzed. The issue presented in this appeal is whether this evidence was admissible as relevant to the issue of the tort-feasor’s culpability and proper for the jury to consider in determining the amount of punitive damages to award. Because we conclude, as a matter of law, that the child’s alleged injuries were not in consequence of the illegal sale in this case, and that the automobile accident was not a circumstance that could be attributed to the illegal sale, we hold that the trial court did not err in refusing to admit evidence relating to the automobile accident and to the child’s injuries. We affirm.
In the summer of 1989, Carrie Jones, then 19 years old, and three of her friends, two of whom were also minors, visited the Rodeo Club, where they were served liquor. The Rodeo Club was operated by the defendant, Exit Inn, Inc. Shortly after leaving the club, the minors were involved in an automobile accident that left Carrie paralyzed. The driver of the vehicle, Rodney Franklin Allen, was over 21 years of age. There was no evidence that the fact that Carrie had been served alcohol contributed to cause the wreck.
Carrie and her friends had been at the Rodeo Club -for several hours prior to the accident. None of them was asked for identification to prove age when they entered the Rodeo Club, nor was Carrie asked for proof of age when she purchased beer in the club that evening. Carrie passed out in the back seat of Allen’s car upon leaving the club. Shortly thereafter, Allen’s car was involved in an automobile accident. Carrie was paralyzed when she was thrown from Allen’s car during the accident.
Patricia and Ross Brackett, Carrie’s parents, sued the Rodeo Club pursuant to § 6-5-70, Ala.Code 1975: the Civil Damages Act. The defendant filed a motion in li-mine that asked the court to suppress any evidence of the subsequent automobile accident and of Carrie’s resulting injuries.[1] At a hearing on the motion in limine, the plaintiffs’ counsel made essentially the same argument before the trial court that counsel makes in this Court: that evidence of the accident and of Carrie’s injuries was admissible because the jury was entitled to consider all relevant circumstances bearing on the degree of culpability of the wrongdoer.
The trial judge refused to admit the evidence of the subsequent automobile accident and of Carrie’s injuries. He stated:
“[I] am of the opinion that [§ 6-5-70] is very limited, that the tort is complete once the beer or spirituous liquor is sold to a minor in violation of the regulations and the statute, and that only the circumstances surrounding the sale or consumption of it there, are admissible. Damages are purely punitive.... It would be highly prejudicial to allow the plaintiff to introduce evidence of a subsequent accident, [as to] which, they absolutely can’t show proximate cause even if it were required.”
(Reporter’s Transcript at 37.)
The plaintiffs then submitted their evidence to a jury. The trial court instructed the jury that it could award only “punitive” *404 damages if it found a violation of § 6-5-70. The jury found in favor of the plaintiffs and assessed punitive damages against the defendant in the amount of $25,000. The trial court entered a judgment against the defendant on the jury verdict. The plaintiffs appeal.
The plaintiffs argue that because only punitive damages are recoverable under the provisions of the Civil Damages Act, evidence of the automobile accident that occurred shortly after the illegal sale took place and of Carrie’s injuries resulting from the accident was admissible to show the degree of culpability of the wrongdoer. Their argument is premised primarily upon a statement made in a special concurrence by Justice Jones in Maples v. Chinese Palace, Inc., 389 So.2d 120, 128 (Ala.1980), as follows:
“While it is not the resultant injury to the minor for which the parent is statutorily granted a right of action, the jury, in assessing punitive damages, may consider all relevant circumstances bearing on the degree of culpability of the wrongdoer. Indeed, if this were not so (i.e., if the only relevant evidence consists of the wrongful sale with knowledge or notice of minority), then every such wrongful act would equate every other such wrongful act; and in such event, undoubtedly, the Legislature would have fixed by statute a uniform civil penalty for each and every violation, rather than saying ‘such damages as the jury may assess.’ ”
(Emphasis added.)
Section 6-5-70, Ala.Code 1975, states:
“Either parent of a minor, guardian or a person standing in loco parentis to the minor having neither father nor mother shall have a right of action against any person who unlawfully sells or furnishes spirituous liquors to such minor and may recover such damages as the jury may assess, provided the person selling or furnishing liquor to the minor had knowledge of or was chargeable with notice or knowledge of such minority. Only one action may be commenced for each offense under this section.”
(Emphasis added.)
For over a century, Alabama has permitted actions against those illegally selling intoxicating liquors. See, King v. Henkie, 80 Ala. 505 (1876). Section 2641, Ala.Code of 1876, authorized an action by a personal representative based on a wrongful act or omission that caused the death of another. At the same time, § 4205 of the 1876 Code made it a crime to sell or give away liquor to persons of “intemperate habits” without the proper authorization. This Court, in King, read the two statutes in pari mate-ria to create a cause of action against one who wrongfully sold or gave away liquor.[2]
In 1907, this right to sue was codified in Ala.Code 1907, § 2467, which stated:
“A father, or if the father be dead, a mother or guardian or person standing in loco parentis to the minor having neither father nor mother, shall have a right of action against any person who sells or furnishes spirituous liquors to his or her son under age, for his own use, and without his or her permission; provided, the person selling or furnishing liquor to the minor had knowledge of or was chargeable with notice or knowledge of such minority.”
This statute, however, contained no provision for the recovery of damages. The code section was amended in the 1923 Code to include such a provision. Section 5673 of the 1923 Code read as follows:
“Either parent of a minor, or guardian or person standing in loco parentis to the minor having neither father nor mother, shall have a right of action against any person who unlawfully sells or furnishes spirituous liquors to such minor, and may recover such damages as the jury may assess; provided the person selling or furnishing liquor to the minor had *405 knowledge of or was chargeable with notice of knowledge of such minority. But one action may be brought for each offense under this section.”
(Emphasis added.)
The phrase “such damages as the jury may assess” has been interpreted by this Court as providing for only punitive damages. See Louisville & Nashville R.R. v. Bogue, 177 Ala. 349, 58 So. 392 (1912); see also, Maples, 389 So.2d at 126-28. The language was first construed as allowing only “punitive” damages in Bogue. Prior to that decision, the Court had stated, in dicta, that the damages recoverable by a father in a statutory action based on the injuries of a child were purely compensatory. Williams v. South & North Alabama R.R., 91 Ala. 635, 9 So. 77 (1890).
In Bogue, the Court compared the phrase used in a statute providing parents an action for the wrongful death of a minor to an older wrongful death statute related to the death of an adult. Code of Alabama 1907, §§ 2485, 2486 (presently Ala.Code 1975, §§ 6-5-391, -410). The Court stated:
“ ‘Such damages as the jury may assess’ cannot by any rational rule of construction mean punitive damages in the one [§ 2486], and compensatory damages in the other [§ 2485]; and to so hold would in our opinion be simply an act of judicial legislation. The entire language of the statute [§ 2485] follows as closely as possible the language of the older statute (section 2486) for the prevention of homicides; and the damages authorized under that statute have always been held to be punitive only....
“... [W]e hold that such damages are punitive, not compensatory, and differ in no respect from the damages recoverable under section [2486] as established by former decisions of this court,”
Bogue, 111 Ala. at 359-60, 58 So. at 395-96. The Court reached this holding by differentiating the Williams case and concluding that the Court in Williams was interpreting the damages available in the Employers Liability Act and not in § 2485, which contained language pertaining to damages that was different from that in the Employers Liability Act. Thus, since the early 20th century, the phrase “such damages as the jury may assess” has been construed to mean that only “punitive” damages are appropriate, although there is some disagreement as to whether that term means that only a penalty can be recovered.[3]
In this case, the plaintiffs do not debate the trial court’s conclusion that, under the statute, only punitive damages are allowable. Instead, they argue that evidence of all the surrounding circumstances of the sale, including evidence of the subsequent automobile accident and of Carrie’s resulting injuries, is admissible in order to aid the jury in its assessment of adequate punitive damages.
We agree with the plaintiffs that generally evidence of all circumstances surrounding the sale is admissible in order to aid the jury in its assessment of punitive damages; however, we cannot agree with the plaintiffs that the evidence of the subsequent automobile accident and of Carrie’s resulting injuries is admissible in this case.
The Civil Damages Act has been interpreted by this Court as being penal in nature. See McLeod v. Cannon Oil Corp., 603 So.2d 889 (Ala.1992); Espey v. Conve *406 nience Marketers, Inc., 578 So.2d 1221 (Ala.1991). In Espey, this Court construed the Civil Damages Act as follows:
“In [1907], the legislature enacted the Civil Damages Act as a provision of the 1907 Code of Alabama. Considering the tone of the times in which the statute was enacted as a provision of the Code and considering the statute on its face, we hold that the Civil Damages Act is a ‘temperance’ or ‘prohibition’ provision, intended to deter the sale of ‘spirituous liquors’ to minors, to deter the intoxication of the minor that would result from such a sale, and to provide a remedy for the aggrieved parties that the Act describes.”
578 So.2d at 1230-31.
In McLeod, this Court further said of the Civil Damages Act that “its purpose [is] to punish any person who unlawfully sells or furnishes spirituous liquors to a minor. Just as the Dram Shop Act creates strict liability in case of its violation, the Civil Damages Act creates strict liability in case of its violation.” McLeod, 603 So.2d at 891.
Because the Civil Damages Act is a strict liability statute that is penal in nature, punitive damages may always be awarded by the jury. However, the question here is: “What surrounding circumstances can the plaintiff show, in addition to showing that an illegal sale occurred?”
Clearly, a plaintiff should be able to show circumstances that could be attributed to the illegal sale or injuries that are in consequence of the illegal sale. But this evidence, like any evidence, must be both material and relevant. See C. Gamble, McElroy’s Alabama Evidence § 20.01 at p. 25 (4th ed. 1991). Here, we conclude that the evidence of the subsequent automobile accident and of Carrie’s resulting injuries simply has no bearing on the case. The evidence has no logical or rational nexus to the illegal sale. The evidence is immaterial. The evidence could also be called irrelevant because it is has little or no probative value as to any element in the cause of action. See, id., at § 21.01(2), p. 35. Clearly, the subsequent automobile accident cannot be a circumstance that could be attributed to the illegal sale and Carrie's injuries were not in consequence of the illegal sale.
Before evidence can be admitted under either of these two tests, the threshold tests of materiality and relevance must be met. We agree with the trial court that the evidence of the subsequent automobile accident and of Carrie’s resulting injuries was neither material nor relevant to this action under the Civil Damages Act. Therefore, we affirm the judgment of the trial court.
AFFIRMED.
SHORES, KENNEDY and INGRAM, JJ., concur.
HORNSBY, C.J., and STEAGALL, J., concur in the result.

. From the record, it appears that the plaintiffs also wanted to introduce testimony from Carrie that if she had not been intoxicated at the time of the accident she would have worn her seat belt. The trial court found this evidence irrelevant. While the plaintiffs have not argued on appeal that this ruling was incorrect, we note that this ruling is consistent with our holding as to the evidence of the subsequent accident and Carrie’s injuries.

. In King, this Court held that the trial court did not err by sustaining the demurrer, because the plaintiff had failed to show proximate cause. The Court further stated that even if the plaintiff had shown proximate cause, the action would still be barred by the plaintiff’s contributory negligence. In this case, however, Ala. Code 1975, § 6-5-70, is a strict liability statute; therefore, contributory negligence would not bar recovery under the statute.

. In Maples, I said the following:
"I agree with the majority that proper parties could recover a penalty in a civil action brought under Section 6-5-70, whether there was an injury or death which proximately resulted from the illegal sale. I do not agree, however, that a civil penalty is the only [form of damages] which can be recovered in such an action. I think that the words 'such damages as the jury may assess’ are broad enough to include the assessment of compensatory damages when injury proximately results from the illegal sale, and punitive damages when death proximately results from the illegal sale. In case of death, of course, there can be but one wrongful death action, whether brought under the Wrongful Death Statute or under Section 6-5-70."
389 So.2d at 125. (Maddox, J., concurring in part and dissenting in part; emphasis original.)
In Maples, Justice Jones also felt that a jury, in assessing punitive damages, could “consider all relevant circumstances bearing on the degree of culpability of the wrongdoer.” 389 So.2d at 128.