This case involves questions of corporate conduct and allegations of minority shareholder oppression and self-dealing by directors of a corporation. N. Jack Stallworth appeals from a summary judgment in favor of AmSouth Bank of Alabama, as the executor of the estates of Stella Stallworth and D.R. Stallworth, and in favor of Carroll E. Blow, Jr., Richard E. Bass, and Markel Wyatt. We affirm.
The facts of this case are as follows: Stallworth Land Company, Inc. ("the Company"), is a family-owned Alabama corporation. The appellant N. Jack Stallworth ("Stallworth") owns 8.7573% of the shares of stock in the Company, sits on its board of directors, and is a vice president of the company. When Stella Stallworth died in 1989 and D.R. Stallworth died in 1991, their two estates together included over 58% of the shares in the Company. AmSouth Bank of Alabama ("AmSouth") is the executor of those two estates, which hold the Company stock pending distribution to, or for the benefit of, family members in accordance with Stella and D.R.'s wills. Two other family members, Una Mae Stallworth and Genevieve Henley, had also died owning Company stock. First Alabama Bank and Jean Turner, who is the appellant Stallworth's sister, are co-executors of those estates. Stallworth and Turner are beneficiaries of the estate of Una Mae Stallworth. AmSouth, as executor of the estates of D.R. Stallworth and Stella Stallworth, appointed a majority of the Company's board of directors: the appellees Carroll E. Blow, Jr., Richard E. Bass, and Markel Wyatt, who are also AmSouth employees. As of May 10, 1996, the Company was structured as follows: *Page 461 
Stockholders: Percentage Ownership — ----------- -------------------- Estate of D.R. Stallworth 31.5766% (AmSouth, executor) Estate of Stella Stallworth 27.1766% (AmSouth, executor) N. Jack Stallworth 8.7573% Estate of Una Mae Stallworth 8.7573% (First Alabama Bank and Jean Turner, co-executors) Estate of Genevieve Henley 8.7573% (First Alabama Bank and Jean Turner, co-executors) Jean Turner 8.7573% (sister of N. Jack Stallworth) Antoinette S. Givens 6.2175%
Directors: Officers: — -------- --------- Richard Bass Richard Bass — president Carroll Blow, Jr. N. Jack Stallworth — vice president Markel Wyatt Carroll Blow, Jr. — vice president/ (AmSouth employees) assistant secretary Jean Turner — secretary/treasurer N. Jack Stallworth Antoinette Givens — assistant secretary Jean Turner
On February 1, 1996, AmSouth, acting as executor of the estates of D.R. Stallworth and Stella Stallworth; Blow; Bass; and Wyatt filed a complaint in the Circuit Court of Mobile County, seeking declaratory relief pursuant to § 6-6-220 et seq., Ala. Code 1975. The complaint alleged that Stallworth had requested that a special meeting of the directors of the Company be called in order to consider and act upon an option, which he claimed was exercisable by the Company pursuant to its bylaws, to acquire the stock held by the estates of deceased shareholders D.R. Stallworth, Stella Stallworth, Una Mae Stallworth, and Genevieve Henley. AmSouth and the other plaintiffs requested that the court enter a judgment declaring (1) whether the Company then had the right to exercise the alleged purchase option and (2) if the option existed, which of the parties were disqualified from voting on the matter. On February 9, 1996, Stallworth filed an answer in which he joined the plaintiffs in asking the court to resolve these issues. On March 21, 1996, Stallworth filed a counterclaim against AmSouth, both in its individual capacity and as executor of the estates of Stella Stallworth and D.R. Stallworth, and against Blow, Bass, and Wyatt. Stallworth sought damages and equitable relief derivatively on behalf of the Company and individually as a minority shareholder.
With regard to his derivative claims, Stallworth asserted generally that AmSouth, as executor of the estates of Stella Stallworth and D.R. Stallworth, controlled a majority of the outstanding shares of stock in the Company and had used that control to appoint AmSouth employees Bass, Blow, and Wyatt as a majority of the board of directors, which he said then managed the Company in such a way as to advance AmSouth's interests at the Company's expense. Stallworth made broad charges that the plaintiffs had breached fiduciary duties of care and loyalty by failing to properly manage the corporation so as to maximize profits and by providing false and misleading information to the shareholders, including him. As to how these fiduciary duties were breached, Stallworth made two specific allegations. First, Stallworth charged that, pursuant to its bylaws, the Company possessed an option to purchase the shares held by the estates of D.R. Stallworth and Stella Stallworth, but the plaintiffs, in order that AmSouth could retain control of the Company, had failed to give notice of, or to act upon, the Company's option. Second, Stallworth asserted that the plaintiffs had engaged in a conspiracy to preserve a timber management contract between the Company and AmSouth, under which, Stallworth says, the Company paid excessive fees to AmSouth. Particularly, Stallworth claimed that when the Company entered into the management contract in 1992, the agreement specified that a majority vote of the shares other than those owned by the estates of D.R. Stallworth and Stella Stallworth, which were controlled by AmSouth, could terminate the contract, with or without cause, upon 90 days' notice. However, Stallworth maintained that when the contract was up for renewal in 1995, Bass, Blow, and Wyatt, without notice to the other shareholders, directed corporate counsel to change the contract to provide that the Company could terminate the contract only by a majority vote of owners and beneficial owners of all outstanding shares.
Stallworth also sought to recover in his individual capacity through an allegation of minority shareholder oppression by the plaintiffs. Stallworth claimed he could recover individually because, he said, Bass, Blow, and Wyatt had excluded him from the management of the corporation in an effort to "squeeze" him out of the corporation. Stallworth prayed for $10 million in compensatory *Page 462 
and punitive damages on his oppression counterclaim.
After answering Stallworth's counterclaim, and before discovery in the case, the plaintiffs filed a motion to stay discovery until the shareholders of the Company could hold a meeting to discuss a course of action and take action regarding the issues raised in the lawsuit. Despite opposition from Stallworth, the trial court issued an order staying discovery.
On May 10, 1996, a special joint meeting of the shareholders and directors of the Company was held in order to address the issues of the lawsuit. All shareholders and directors were present at the meeting, either in person or by proxy. After all of the other shareholders besides Stallworth stated for the record that Stallworth did not fairly and adequately represent the interests of the shareholders situated similarly as to him, the shareholders and directors then turned to consider the specific allegations of Stallworth's counterclaim. Each shareholder besides Stallworth voted to adopt resolutions declaring that even if the right to purchase stock from the estates of any of the deceased shareholders existed and had not lapsed, the Company should not pursue the purchase of those shares. Also, each shareholder besides Stallworth voted to adopt a resolution stating that the shareholders ratified and approved the conduct of Blow, Bass, and Wyatt in not requesting or taking any action toward purchasing those shares. The shareholders also addressed the challenged conduct relating to the Company's timber management contract with AmSouth. The shareholders approved resolutions that ratified all actions of the directors in entering into and maintaining the relationship with AmSouth under the 1992 and 1995 management contracts. Stallworth did vote to ratify entering into the contract in 1992, although he cast the only negative votes in the other ballots. However, there was also a unanimous vote authorizing the officers to revise the 1995 contract to substitute the 1992 contract termination language, which would allow termination of the contract by a majority vote of the shares other than those shares in the estates of D.R. Stallworth and Stella Stallworth, of which AmSouth was the executor.
On May 24, 1996, the plaintiffs, as counterclaim defendants, moved for a summary judgment based on the shareholder actions taken at the meeting of May 10, 1996. The motion was accompanied by a copy of a certified transcript of the meeting of shareholders and directors. The trial court entered a summary judgment against Stallworth on each of his counterclaims. The trial court concluded that judicial action on all of Stallworth's derivative and individual counterclaims was barred by the provisions of Division F of the new Alabama Business Corporation Act, § 10-2B-8.60 et seq., Ala. Code 1975, because, pursuant to § 10-2B-8.61, the shareholders had, according to the procedures outlined in § 10-2B-8.63, ratified the director conduct underlying all of Stallworth's counterclaims. The trial court also held that Stallworth lacked standing under Rule 23.1, Ala. R. Civ. P., to pursue his derivative counterclaims because, it held, Stallworth was an inadequate representative of similarly situated shareholders. Finally, in light of the Company's affirmative decision not to purchase any shares from the estates of the deceased shareholders, the trial court dismissed, without prejudice and as moot, the original complaint for a declaratory judgment.
This Court has stated the following in regard to our review of a summary judgment:
 "A summary judgment is proper when there exists no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, this Court will view the evidence in a light most favorable to the nonmovant and will resolve all reasonable doubts concerning the existence of a genuine issue of material fact against the moving party. In determining the existence or absence of a genuine issue of material fact, this Court is limited to a consideration of the factors that were before the trial court when it ruled on the summary judgment motion. However, this Court's reasoning is not limited to that applied by the trial court. *Page 463 
 "Once the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden shifts to the nonmovant to go forward with evidence demonstrating the existence of a genuine issue of material fact. Because this action was filed after June 11, 1987, the nonmovant must meet this burden by 'substantial evidence.' Under the substantial evidence test, the nonmovant must present 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' "
Chatham v. CSX Transportation, Inc., 613 So.2d 341, 343 (Ala. 1993) (quoting West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989) (other citations omitted)).
Although the trial court did not state this as its basis for entering the summary judgment, we agree with the plaintiffs (the counterclaim defendants) that Stallworth lacks standing to bring his derivative claims, because he failed to comply with the "director demand" requirement of Rule 23.1, Ala. R. Civ. P.[1] That rule, which is modeled on a comparable Federal Rule of Civil Procedure, requires that a derivative plaintiff "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." This language is referred to as a provision for "director demand." Elgin v. Alfa Corp., 598 So.2d 807, 814 (Ala. 1992). It has been noted that Rule 23.1 does not create a substantive demand requirement of any particular dimension and, on its face, speaks only to the adequacy of the shareholder representative's pleadings. Kamen v. Kemper Fin. Services,Inc., 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). However, the rule clearly contemplates both the demand requirement and the possibility that demand may be excused. Id.
Thus, it is not a mere formality, but rather an important aspect of substantive corporate law that limits the respective powers of the individual shareholder and of the directors to control corporate litigation. Blasband v. Rales, 971 F.2d 1034
(3d Cir. 1992); Kamen, supra.
"One of the reasons for the director-demand requirement is that it allows the derivative corporation, on whose behalf the action is brought in the first place, to take over the litigation, thus permitting the directors the opportunity to act in their normal status as conductors of the corporation's affairs." Elgin at 814, citing Shelton v. Thompson,544 So.2d 845, 849 (Ala. 1989). " 'Practically speaking, the demand requirement promotes a form of "alternative dispute resolution" — that is, the corporate management may be in a better position to pursue alternative remedies, resolving grievances without burdensome and expensive litigation.' " Shelton, 544 So.2d at 850, quoting Kaufman v. Kansas Gas Electric Co.,634 F. Supp. 1573, 1577 (D.Kan. 1986), citing Lewis v. Graves,701 F.2d 245, 247 (2d Cir. 1983). See also Kamen, supra. Because the purpose of a demand upon the board of directors is to alert the board so that it can take corrective action, if it feels any is merited, the shareholder should allow sufficient time for the directors to act upon the demand before instituting a derivative action. Quincy v. Steel, 120 U.S. 241, 7 S.Ct. 520,30 L.Ed. 624 (1887); Shlensky v. Dorsey, 574 F.2d 131 (3d Cir. 1978); Nussbacher v. Continental Illinois Nat'l Bank TrustCo., 518 F.2d 873 (7th Cir. 1975), cert. den., 424 U.S. 928,96 S.Ct. 1142, 47 L.Ed.2d 338 (1976).
Rule 23.1 requires the plaintiff to plead with particularity his or her efforts to obtain from the directors the actions desired or the reasons for the failing to make such efforts. At a minimum, the demand should identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request *Page 464 
remedial relief. Allright Missouri, Inc. v. Billeter,829 F.2d 631 (8th Cir. 1987). However, demand on the directors may be excused if that demand would be futile. Elgin at 814. To show futility, the plaintiff shareholder must demonstrate such a degree of antagonism between the directors and the corporate interest that the directors would be incapable of performing their duty. Id. at 815. See also Cooper v. USCO Power Equip.Corp., 655 So.2d 972 (Ala. 1995). A bare allegation that a majority of the directors are wrongdoers is insufficient, although a trial court may consider the facts underlying that allegation in support of a plaintiff's argument of futility.Elgin, supra.
Stallworth alleges that making a demand upon the directors to obtain the actions he desires would have been futile, although he also appears to make some attempt at alleging that he previously did make demands upon the directors. In his counterclaim, Stallworth stated the following:
 "Stallworth prosecutes this counterclaim derivatively on behalf of the corporation because Counterclaim Defendants at all times have conspired to injure the corporation in furtherance of the interest of AmSouth and to take actions and/or omit to take actions detrimental to the shareholders, notwithstanding protest by Stallworth and his representatives. Further complaints by Stallworth are futile because in the past, Stallworth has demanded [that] AmSouth act in the best interest of the corporation, but it has refused and, indeed, has rejected proposed action by Stallworth and his representatives which would be in the best interests of the corporation. Stallworth has standing to bring this action and further demand on the directors for corrective action would be futile and unsuccessful."
(C.R.26.)
Stallworth has asserted that a majority of the board had committed wrongs against the corporation, but we believe Stallworth has failed to demonstrate that a demand upon the directors would have been futile. He refers generally to the fact that he has in the past made "demands" that the majority directors "act in the best interest of the corporation" and that those demands met with rejection, leading him to the conclusion, he argues, that to make a demand before filing his counterclaim in this instance would have been similarly futile. There is some authority to support the position that demand may be excused where it is alleged that a similar demand has been made and refused by the board. See Schwartz v. Romnes,357 F. Supp. 30 (S.D.N.Y.), rev'd on other grounds, 495 F.2d 844 (2d Cir. 1974); In re Pittsburgh L.E.R.R. Secur. AntitrustLitigation, 392 F. Supp. 492 (E.D.Pa. 1975); Zimmerman v. Bell,585 F. Supp. 512 (D.Md. 1984). But see Kaufman v. SafeguardScientifics, Inc., 587 F. Supp. 486 (E.D.Pa. 1984). However, Stallworth fails to state what the subjects of his prior demands were, when they were made, what specific relief he requested, or how those demands related to the actions he desires in this case. Thus, these alleged "demands" are far too vague in themselves either to satisfy the particularity-of-pleading requirement of Rule 23.1, seeAllright Missouri, supra, or to give rise to the inference that a demand seeking relief in this instance would be so similar that it would be futile.
Even assuming that the directors had in the past failed to acquiesce to Stallworth's desires in governing the Company, there is nothing to indicate antagonism so severe in this case that the majority directors were unable to perform their duties. To the contrary, it appears that the directors were willing to consider, and potentially to act upon, proposals made by Stallworth, and that they were even attempting doing so in this case when Stallworth filed his derivative counterclaims.[2] One of the major specific *Page 465 
allegations of Stallworth's derivative counterclaim is that the majority directors had failed to act upon the Company's option to purchase the stock held by the estates of D.R. Stallworth and Stella Stallworth. But it was in response to Stallworth's insistence that the majority directors initiated this litigation by seeking a declaratory judgment to determine voting eligibility, so that they might act on this very issue. It is true that the majority directors appointed by AmSouth took the position that the Company could no longer exercise the option to purchase those shares, but their seeking the declaratory judgment before Stallworth filed his claim indicates that they were willing to listen to Stallworth's arguments and to fulfill their duties as directors. That the directors disagree with the merits of an argument does not mean that demand is futile. A demand is futile only if the directors' minds are closed to argument. Opposition should not be confused with futility. Kamen v. Kemper Fin. Services, Inc.,939 F.2d 458, 462 (7th Cir.), cert. den., 502 U.S. 974,112 S.Ct. 454, 116 L.Ed.2d 471 (1991).
It also appears that Stallworth may have recognized the possibility that the majority directors had sought the declaratory judgment in order to allow them to take action within the corporation that could potentially operate to bar at least some of Stallworth's derivative claims. Provisions of Division F of the new Alabama Business Corporation Act prevent judicial action challenging a transaction on the grounds of a director's conflict of interest, where qualified directors or the owners of qualified shares approve the transaction pursuant to specific procedures. See § 10-2B-8.60 et seq., Ala. Code 1975. In addition, this Court has held that the "business judgment rule" prevents a derivative action where a special committee of disinterested directors determines in good faith, after a thorough investigation, that it is not in the corporation's best interests for the derivative action to proceed. See Roberts v. Alabama Power Co., 404 So.2d 629 (Ala. 1981). Whether the actions taken by the shareholders after Stallworth filed his derivative counterclaim were actually effective to bar judicial action pursuant to the new Alabama Business Corporation Act, as the trial court held they were, is not dispositive of the question whether a prior demand would have been futile. Rather, having recognized the possibility that the majority directors might be able to preempt his derivative claims by referring them to disinterested directors or stockholders, Stallworth seems to have made a strategic election to forgo making a demand. Under the circumstances of this case, we conclude that Stallworth has failed to show that a demand upon the directors would have been futile.
Having disposed of Stallworth's derivative claims, we now address his individual claim of minority shareholder oppression or squeeze-out. Stallworth's counterclaim alleges the following:
 "[Plaintiffs] are also liable to [Stallworth] because they have willfully and systematically excluded him from the business and management of [the] corporation for many years. In doing so, it has been the primary purpose of the [plaintiffs] to squeeze [Stallworth] out of the corporation, deny him his proportionate share of benefits from the corporation and force him ultimately to sell his stock at a disproportionately low price below market value. In addition, the above-described actions taken . . . by the [plaintiffs] for the benefit [of] AmSouth [, which formed the basis of Stallworth's derivative claims,] have directly resulted in oppressive conduct in denying *Page 466 
[Stallworth] his rights to participate in management, resulting in a depreciation in the value of his stock, instead of an enhancement thereof, and deprivation of assets of the corporation, all to the detriment of [Stallworth] and other shareholders."
As noted previously, the trial court found that at the shareholders' meeting of May 10, 1996, a majority of the qualified shareholders "approved and ratified the actions of the directors" that Stallworth alleged constituted conflicts of interest. The trial court also concluded that Stallworth's "oppression" or "squeeze-out" counterclaim was based purely on an alleged conflict of interest. Therefore, the trial court reasoned that, pursuant to Division F of the new Alabama Business Corporation Act, the shareholders' ratification of the conduct underlying the alleged conflict of interest was effective to bar judicial action not only on Stallworth's derivative counterclaims, but also on his individual squeeze-out counterclaim as well.
We do not agree with the trial court that Stallworth's individual squeeze-out claim is based solely upon the majority directors' alleged conflict of interest. So even if we were to assume that the provisions of Division F of the new Alabama Business Corporation Act would bar a squeeze-out claim that is based purely on an alleged conflict of interest, we conclude that those provisions would not do so in this case. However, while, again, we do not completely agree with the reasoning of the trial court, we affirm its judgment because the record demonstrates that Stallworth cannot produce substantial evidence of a squeeze-out by the majority shareholders.
In Burt v. Burt Boiler Works, Inc., 360 So.2d 327 (Ala. 1978), this Court first recognized that minority shareholders have an actionable individual claim against the majority in a close corporation. In rejecting the view that "a majority may always regulate and control the lawful exercise of corporate powers," this Court stated, "It is no longer seriously debated that majority stockholders owe a duty to at least act fairly to the minority interests, and the majority cannot avoid that duty merely because the action taken is legally authorized." Id. at 331. We noted: "Where several owners carry on an enterprise together (as they usually do in a close corporation), their relationship should be considered a fiduciary one similar to the relationship among partners. The fact that the enterprise is incorporated should not substantially change the picture."Id. at 332, quoting F.H. O'Neal, Close Corporations § 8.07. We concluded, therefore, that should majority shareholders in a close corporation "deprive the minority stockholders of their just share of the corporate gains," that conduct would be a breach of the duty owed to the minority and would be actionable. Burt Boiler Works at 332. In that case, however, this Court held that the plaintiffs could not recover, because they "show[ed] only that the majority [had] taken control of the corporation," and they failed to show "that they [had] been deprived of any rights they have as stockholders in the corporation." Id.
We reaffirmed our recognition of the squeeze-out cause of action in Galbreath v. Scott, 433 So.2d 454 (Ala. 1983), stating that it represented our adoption of "attitudes towards close corporations which reflect the realities of the situation and which recognize a distinction between closely and widely held corporations." Id. at 457. We explained as follows:
 "When majority stockholders personally assume the multiple roles of owners, board of directors, and managing officers, they can not only deprive minority shareholders of a voice in the operation of the business, but they can also siphon off corporate income and deprive minority owners of income from their interest in the business. Minority shareholders can find themselves holding stock which pays no dividends and which cannot, as a practical matter, be sold. Majority shareholders can 'squeeze-out' minority owners."
Id. See also Michaud v. Morris, 603 So.2d 886 (Ala. 1992); Exparte Brown, 562 So.2d 485 (Ala. 1990). However, the Galbreath
Court held that the plaintiff, who had alleged that the majority shareholders had committed waste of the corporation's assets, could not recover individually under a squeeze-out theory:
 "The waste of corporate assets by majority stockholders is primarily an injury to the *Page 467 
corporation itself. The injury to minority stockholders is secondary. If the corporation refused to assert its cause of action, an action may be maintained by stockholders on behalf of the corporation. In such an action the corporation is the real party in interest and would be the one in whose favor a judgment would be rendered."
Galbreath, at 457 (citations omitted). See also Pegram v.Hebding, 667 So.2d 696, 702 (Ala. 1995) ("[i]t is well settled that when individual damages sought to be recovered by a plaintiff are incidental to his or her status as a stockholder in a corporation, the claim is a derivative one and must be brought on behalf of the corporation").
Although this Court has held that majority shareholders in a close corporation "owe a duty to at least act fairly to the minority interests," Burt Boiler Works, 360 So.2d at 331, the squeeze-out cause of action is not a panacea for any and all conduct undertaken by majority shareholders of a close corporation that could be deemed "unfair" to the minority. As our holding in Galbreath indicates, a minority shareholder cannot parlay a wrong committed primarily against the corporation, which gives rise to a derivative claim only, into a personal recovery of damages under a squeeze-out theory by simply stating that the injury to the corporation is also "unfair" to him as well. Stallworth asserts that the majority shareholders have engaged in "oppressive" conduct that has resulted "in a depreciation in the value of his stock, instead of an enhancement thereof, and deprivation of assets of the corporation, all to the detriment of [Stallworth] and other shareholders." The lost value of a minority shareholder's stock resulting from director self-dealing or mismanagement could certainly be characterized as "unfair" to the minority stockholder in some sense, but this is a quintessential derivative injury, merely incidental to one's status as a stockholder, and thus not a harm cognizable under a squeeze-out theory. Galbreath; Pegram, supra. A minority shareholder has a remedy for such an injury, but that remedy is a derivative action brought on behalf of the corporation.
Stallworth has also alleged that the majority shareholders have "willfully and systematically excluded him from the business and management of [the] corporation." The exclusion of a minority stockholder in a close corporation from employment or participation in management, and the resulting deprivation of salary for the performance of such duties, is the kind of personalized injury for which an individual shareholder may seek a remedy via a squeezeout action. See Michaud v. Morris;Ex parte Brown, supra. Under the principles of corporation law, Stallworth, as a minority shareholder, has no "right" to participate in managing the business or affairs of the corporation generally. See, e.g., Shelton v. Thompson, 544 So.2d at 849 (" '[a] cardinal rule of corporate law is that directors, rather than shareholders, manage the business and affairs of a corporation' " (quoting Kaufman v. Kansas Gas,supra)); Fulton v. Callahan, 621 So.2d 1235 at 1252 (Ala. 1993) (" '[t]hose who embark in a corporate enterprise as stockholders do so under an implied agreement that the business shall be controlled and directed by a majority of the stockholders' "). However, our adoption of a cause of action for the squeeze-out of minority shareholders in a close corporation is based to a significant degree upon the recognition that a close corporation enterprise often "acquires many of the attributes of a partnership or sole proprietorship and ceases to fit neatly into the classical corporate scheme."Galbreath, 433 So.2d at 457 (citation omitted). Thus, unlike a minority shareholder in a widely held corporation, a minority shareholder in a closely held corporation could possibly have a reasonable expectation of continuing employment by the corporation[3] or of a continuing *Page 468 
right to take part in management decisions. See F. Hodge O'Neal and R. Thompson, Oppression of Minority Shareholders § 3:06 (2d ed. 1985).
But in this case, the record affirmatively shows that Stallworth has participated in management decisions in his role as a corporate director and, indeed, that he continues to do so. Stallworth also retains his status as vice president of the Company. Stallworth has not even suggested that the majority has sought to oust him from either post or to discontinue any salary he might be entitled to receive for his performance of his duties in these posts. Nor does Stallworth allege that he has been deprived of any other benefit he might have had reason to expect from his status as a stockholder. Thus, the alleged oppression of which Stallworth complains amounts to nothing more than the fact that the majority shareholders, apparently with the backing of every minority shareholder other than Stallworth, will not accede to his wishes on matters of corporate management. We hold that this allegation, under the facts presented in this case, is insufficient to support Stallworth's claim of squeeze-out.
Stallworth complains, however, that the trial court erred in entering the summary judgment against him while discovery, which he says was crucial, was pending. With regard to a court's entering a summary judgment while allegedly crucial discovery is pending, this Court, in Reeves v. Porter,521 So.2d 963 (Ala. 1988), stated:
 "The mere pendency of discovery does not bar summary judgment. If the trial court from the evidence before it, or the appellate court from the record, can ascertain that the matter subject to production was crucial to the non-moving party's case (Parrish v. Board of Commissioners of Alabama State Bar, 533 F.2d 942 (5th Cir. 1976)) or that the answers to the interrogatories were crucial to the non-moving party's case (Noble v. McManus, 504 So.2d 248 (Ala. 1987)), then it is error for the trial court to grant summary judgment before the items have been produced or the answers given. However, the burden of showing that these items are crucial is upon the non-moving party. He can do so by complying with Rule 56(f), Ala.R.Civ.P., Water View Developments, Inc. v. Eureka, Inc., 512 So.2d 916 (Ala. 1987). Rule 56(f) provides: 'Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.'[4] A pending motion to compel production (Parrish, supra) and a motion to compel answers to interrogatories, which has been granted (Noble, supra) when the evidence before the court clearly shows that the evidence sought is crucial to the non-moving party's case, have been held sufficient compliance with Rule 56(f). However, when no such crucial evidence would be supplied by the production or by the answers to the interrogatories, it is not error for the trial court to grant summary judgment with discovery pending. Wallace v. Brownell Pontiac-GMC Co., 703 F.2d 525 (11th Cir. 1983); Noble v. McManus, supra.
In Wallace, Judge Kravitch noted: 'Most, if not all, cases involving a Rule 56(f) issue will be factually dissimilar. For this very reason, a blanket rule would be inappropriate.' 703 F.2d at 528. The burden is upon the non-moving party to comply with Rule 56(f) or to prove that the matter sought by discovery is or may be crucial to the non-moving party's case."
521 So.2d at 965 (footnote added). See also Copeland v. SamfordUniversity, 686 So.2d 190, 194-95 (Ala. 1996); Diamond v.Aronov, 621 So.2d 263, 265-66 (Ala. 1993). *Page 469 
Because we have determined that Stallworth lacked standing to bring his derivative claims, we are concerned only with whether he has carried his burden to show that matters sought in discovery were crucial to his individual squeeze-out counterclaim. Stallworth did file an affidavit pursuant to Rule 56(f), Ala. R. Civ. P. However, relevant to his squeeze-out counterclaim, Stallworth's affidavit makes only the following assertion:
 "Discovery is necessary to develop facts relating to unlawful efforts by AmSouth Bank of Alabama, Carroll E. Blow, Jr., Richard E. Bass, and Markel Wyatt . . . to willfully and wrongfully oppress me as a minority shareholder of Stallworth Land Company, Inc., by excluding me from the affairs of the corporation and by unlawfully diminishing or reducing the fair market value of my stock and depriving me of other important and valuable rights in the corporation."
Stallworth's conclusory affidavit fails even to identify what crucial evidence pertaining to his squeeze-out claim discovery might disclose. As explained above, the shortcoming of Stallworth's squeeze-out claim lies primarily in the lack of even an allegation that the majority shareholders have deprived him individually of anything except the ability to singlehandedly direct corporate business in a manner contrary to the wishes of every other stockholder. Surely, Stallworth, a director and officer in the Company, did not require discovery to ascertain which benefits of stock ownership he alleges the majority shareholders denied him. Thus, as with his derivative claims, we also conclude that the trial court properly entered the summary judgment on Stallworth's squeeze-out counterclaim.
AFFIRMED.
HOOPER, C.J., and HOUSTON, KENNEDY, COOK, and BUTTS, JJ., concur.
ALMON and SEE, JJ., concur in the result.
MADDOX, J., dissents.
[1] Stallworth argues that it would be "manifest injustice" to affirm the summary judgment on a ground that he had no opportunity in the trial court to oppose with evidence and legal argument. However, this Court can affirm a judgment on a basis not asserted to the trial court, so long as the judgment itself is proper. Progressive Specialty Ins. Co. v. Hammonds,551 So.2d 333 (Ala. 1989).
[2] Despite his failure to plead with particularity that he had made the required demand, one might reasonably find from the record that Stallworth had made an actual demand upon the directors regarding one of his principal counterclaims. The initial complaint seeking the declaratory judgment alleges that Stallworth had requested a special meeting of the directors to consider and act upon his proposal to exercise the option, which Stallworth claimed still existed, to purchase the shares of stock held by the estates of D.R. Stallworth and Stella Stallworth. This strongly suggests that Stallworth had proposed to the directors that the Company should purchase those shares, although it is unclear exactly when this request might have been made.
However, even assuming, for the sake of argument, that this was a proper "demand" as to his derivative claims relating to the directors' failure to act upon the Company's option, we would still conclude that Stallworth failed to comply with Rule 23.1. The complaint for the declaratory judgment shows that the majority directors had not rejected the demand but were, instead, in the process of acting upon it. There has been no allegation that the directors engaged in any unreasonable sort of delay once they were presented with Stallworth's demand; thus, we conclude that Stallworth did not permit them sufficient time to act upon his demand. The premature filing of a complaint or claim after a demand has been made is equivalent to a failure to make a demand, and that premature filing warrants dismissal. Recchion on behalf of Westinghouse ElectricCorp. v. Kirby, 637 F. Supp. 290 (W.D.Pa. 1986).
[3] In Michaud v. Morris, supra, a shareholder who owned a 25% interest in a close corporation contended that he had been squeezed out; he contended this solely because the majority had used its control to terminate his employment with the corporation's failing restaurant enterprise. This Court stated that the minority shareholder "might have had a legitimate expectation that he would be retained as general manager of the corporation." 603 So.2d 889. Despite the legitimacy of that expectation, however, this Court held that, "given the poor performance of the restaurant," "expectations, standing alone, are not enough under the facts of this case to show oppression at the hands of the majority." Id. Therefore, this court held, the majority shareholders were entitled to a directed verdict on the minority shareholder's "oppression" claim. Id.
[4] On October 1, 1995, since our decision in Reeves v. Porter, the language of Rule 56(f), Ala. R. Civ. P., was amended, but the amendment was " 'technical" and "[n]o substantial change [was] intended." Committee Comments to October 1, 1995, amendment to Rule 56.