[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1227 
The plaintiffs below, Charles M. Fogarty and his wife, Jane C. Fogarty, appeal from a summary judgment entered by the Baldwin Circuit Court in favor of the defendants, Gary Southworth, Gerald McGill, and Confederate Money, LLC. We affirm in part, reverse in part, and remand.
 I. Factual Background and Procedural History
In late 1999 and early 2000, the Fogartys invested almost $200,000 in Confederate Money, LLC, in exchange for the Fogartys' receiving a 12.5% interest in the company; Confederate Money was in the process of constructing a hotel in Gulf Shores, and the Fogartys' contribution was to finance a portion of the construction project. According to the Fogartys, certain members of Confederate Money represented to them that the McPherson Group, a member in Confederate Money and an entity composed of Dr. James D. Bearden III, and his wife, Ann S. Bearden, Southworth, and McGill, would convey the land upon which the hotel was to be built to Confederate Money "free and clear," and, in exchange, the McPherson Group would receive a 51% interest in Confederate Money, making it a majority member. The Fogartys were told that the land the McPherson Group intended to convey represented at least a $600,000 equity investment in Confederate Money. Relying upon this representation, the Fogartys made their capital contribution in the amount of almost $200,000.
In January 2000, at the urging of the other members of Confederate Money, including Southworth and McGill, the Fogartys personally guaranteed a $2,600,000 construction loan for Confederate Money, based on their belief that the entire proceeds of the loan would be spent on the construction of the hotel. The construction of the hotel was completed and the hotel began operations in May 2000. In December of that year, the Fogartys contributed an additional $65,000 to Confederate Money to cover the hotel's losses, relying on representations that the additional capital contribution would increase the Fogartys' ownership interest in Confederate Money from 12.5% to 20%. In accordance with their belief that their ownership interest in Confederate Money was 20%, the Fogartys paid 20% of Confederate Money's expenses during 2001. *Page 1228 
In November 2001, the Fogartys received a letter from Confederate Money stating that the construction loan that the Fogartys had personally guaranteed was in danger of default, and the Fogartys loaned Confederate Money an additional $100,000. In early 2002, the Fogartys met in Gulf Shores with the accountant for Confederate Money to discuss their concerns about the deterioration of the hotel's finances. At that time, the Fogartys learned that the land contributed by the McPherson Group on which the hotel had been constructed had not been conveyed to Confederate Money "free and clear" but had been conveyed subject to a mortgage that had been paid off at the closing on January 25, 2000, using a portion of the $2,600,000 construction loan that the Fogartys had personally guaranteed. At that meeting the Fogartys also learned of other alleged misrepresentations that members of Confederate Money had made.
In April 2002, the Fogartys hired a law firm to represent them in their dispute with Confederate Money. On January 14, 2004, nearly two years after they retained counsel, the Fogartys filed this action in the Baldwin Circuit Court. In their 14-count complaint against Confederate Money, its other members, and the attorneys who represented Confederate Money, the Fogartys sought a preliminary injunction to prevent corporate waste and a judgment declaring their ownership interest in Confederate Money; they also alleged claims for money owed and, among others, claims of oppression, breach of fiduciary duty, conversion, fraud, conspiracy to defraud, civil theft, and the unauthorized practice of law.[1] In March 2004, Confederate Money, Southworth, and McGill moved for a summary judgment on all claims and submitted briefs to the court. The trial court held two hearings on the motions and allowed all the parties to file post-hearing briefs. The trial court entered a summary judgment in favor of Confederate Money, Southworth, and McGill on all claims against them, on the basis that the Fogartys' fraud count was barred by the two-year statute of limitations. Because the summary judgment did not conclude the action as to the remaining defendants, the trial court then certified the summary judgment as final pursuant to Rule 54(b), Ala. R. Civ. P.
 II. Standard of Review
The standard for reviewing a summary judgment is well settled. To grant a motion for a summary judgment, the trial court must first determine that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. "When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present `substantial evidence' creating a genuine issue of material fact." Ex parte AlfaMut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala. 1999) (citingBass v. SouthTrust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989); § 12-21-12(d), Ala. Code 1975). "Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" 742 So.2d at 184 (quoting West v. Founders LifeAssurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)).
In reviewing a summary judgment, this Court analyzes the facts and the *Page 1229 
legal issues de novo. Alabama Republican Party v.McGinley, 893 So.2d 337, 342 (Ala. 2004). "Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant." Ex parte Alfa Mut. Gen. Ins.Co., 742 So.2d at 184 (citing Hanners v. BalfourGuthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)).
 III. Analysis
The Fogartys cite three reasons the trial court should not have entered the summary judgment for Confederate Money, Southworth, and McGill on all the Fogartys' claims against those defendants. First, the Fogartys argue, the summary judgment should not have been entered because discovery requests were outstanding, and, as the affidavit submitted in opposition to the summary-judgment motions established, they were unable to present sufficient facts to oppose the summary-judgment motions and were entitled to a continuance of the hearing to allow discovery to proceed, pursuant to Rule 56(f), Ala. R. Civ. P. Second, the Fogartys argue, the statute of limitations does not bar their fraud count because, they argue, their complaint was filed within two years of when they had actual knowledge of the alleged fraud. Finally, they argue, the summary judgment was improper as to the other 13 counts in their complaint that are separate from the fraud count. We address each issue in turn.
 A. Outstanding Discovery Requests
Rule 56(f), Ala. R. Civ. P., states, in pertinent part: "Should it appear from the affidavits of a party opposing the [summary-judgment] motion that the party cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition, the court may deny the motion for summary judgment or may order a continuance to permit . . . discovery to be had. . . ." As we noted in Scrushy v. Tucker,955 So.2d 988, 1007 (Ala. 2006), "`[s]uch an affidavit should state with specificity why the opposing evidence is not presently available and should state, as specifically as possible, what future actions are contemplated to discover and present the opposing evidence.'" (Citing Committee Comments to August 1, 1992, Amendment to Rule 56(c) and Rule 56(f).) As the rule indicates, whether to deny a motion for summary judgment or to grant a continuance to allow discovery to proceed is discretionary with the trial court.
However, the scope of the trial court's discretion is narrow, not broad. This Court has consistently held that the pendency of outstanding discovery alone is not sufficient to bar a summary judgment. See Reeves v. Porter, 521 So.2d 963, 965
(Ala. 1988); Hope v. Brannan, 557 So.2d 1208, 1212
(Ala. 1989). Furthermore, if the party opposing the motion can show that the outstanding discovery is crucial to that party's ability to oppose a summary-judgment motion, then the trial court should not enter the summary judgment until the outstanding discovery is completed. McCullar v. UniversalUnderwriters Life Ins. Co., 687 So.2d 156, 161 (Ala. 1996) (noting that a nonmovant at summary-judgment stage has the "burden of proving how information from [documents sought in discovery] is crucial to her case"). Therefore, parties opposing a summary judgment bear a more stringent burden than merely showing that the outstanding discovery "may be" crucial to their case.
A mere "conclusory" affidavit by the party opposing the summary-judgment *Page 1230 
motion will not support a claim that a summary judgment was improperly granted in light of pending discovery. Stallworthv. AmSouth Bank, 709 So.2d 458, 469 (Ala. 1997). InStallworth, the "conclusory" affidavit "fail[ed] . . . to identify what crucial evidence pertaining to his . . . claim discovery might disclose." Id. In Wallace v.Brownell Pontiac-GMC Co., 703 F.2d 525 (11th Cir.1983), the United States Court of Appeals for the Eleventh Circuit annunciated a rule regarding the specificity of an affidavit, based on Rule 56(f), Fed.R.Civ.P., which is identical to our Rule 56(f). In Wallace, the Eleventh Circuit stated that the affiant seeking relief under Rule 56(f)
 "`may not simply rely on vague assertions that additional discovery will produce the needed, but unspecified, facts,' but rather he must specifically demonstrate `"how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of [material] fact."'"
703 F.2d at 527 (quoting SEC v. Spence Green Chem.Co., 612 F.2d 896, 901 (5th Cir.1980) (quoting in turnWillmar Poultry Co. v. Morton-Norwich Prods., Inc.,520 F.2d 289, 297 (8th Cir.1975))). Therefore, to be considered sufficient and not merely "conclusory," an affidavit in support of a continuance under Rule 56(f) must specifically state what items of outstanding discovery are crucial and why that discovery is essential to aid the nonmoving party in opposing the pending motion for a summary judgment.
The trial court held its first hearing on the motions for a summary judgment on May 14, 2004. After the hearing, the parties were given until December 28, 2004, to conduct further discovery, and the trial court ordered the parties to submit briefs. Attached to the Fogartys' post-hearing brief was an affidavit from Charles Fogarty that elaborated on facts supplied in an affidavit by Jane Fogarty that was filed with the Fogartys' pre-hearing brief in opposition to the summary-judgment motions. Both Jane Fogarty's and Charles Fogarty's affidavits merely detailed facts surrounding the alleged fraud. Neither affidavit made any mention of the need to complete discovery before the summary-judgment motions could be decided. It was not until October 15, 2004, almost two and one-half months before the court's December 28, 2004, deadline for completion of discovery, that the Fogartys' attorney filed an affidavit pursuant to Rule 56(f). On February 15, 2005, the trial court again heard arguments on the summary-judgment motions.
The affidavit the Fogartys filed on October 15, 2004, stated, in pertinent part:
 "10. It will be necessary to receive written discovery responses from all Defendants, to solve any discovery issues created by objections or inadequate production, to receive documentation from third parties, as well as to take the depositions of all Defendants and the above mentioned third parties in order for [the Fogartys] to oppose the pending motions for partial summary judgment.
 "11. The Defendants would have this Court hear arguments on their various motions for partial summary judgment after concluding their discovery, but before [the Fogartys] have had the benefit of receiving any of Defendants' discovery responses, or similarly taking the depositions of Defendants. For those reasons, [the Fogartys] cannot present further evidence in opposition to the various motions for partial summary judgment *Page 1231 
until said discovery is conducted, such that those motions for summary judgment should be denied or alternatively continued until completion of written discovery, and the depositions of Defendants. . . ."
This affidavit does not specifically state what items of outstanding discovery are crucial to the Fogartys' opposition, nor does it state why that discovery was essential to aid the Fogartys in opposing the pending summary-judgment motions. Because it does not meet these threshold requirements, it is "conclusory." Therefore, the trial court did not exceed its discretion in refusing to order a continuance and in granting the summary-judgment motions.
 B. Summary Judgment on the Fraud Count
The Fogartys, as previously noted, sought relief based on various claims stated in multiple counts in their complaint, one of which was devoted to fraud. We first address the summary judgment as to the fraud count.
The Fogartys made their initial capital contribution to Confederate Money at some point in the fall of 1999. The Fogartys state that "an inspection of the warranty deed from the McPherson Group to Confederate Money dated January 25, 2000, would have confirmed . . . that the property was deeded free and clear as it would not mention a prior mortgage." Confederate Money, Southworth, and McGill urge this Court to accept that the "predicate act" of fraud alleged by the Fogartys was the alleged misrepresentation that the McPherson Group would convey the land upon which the hotel was to be constructed to Confederate Money "free and clear" in exchange for a 51% ownership interest in Confederate Money.[2] Confederate Money, Southworth, and McGill assert various theories by which they contend that the Fogartys had notice sufficient to start the running of the two-year statutory period of limitations as to this alleged misrepresentation. We need not address the merits of any of these theories, however, including the theory that an examination of the public records in late 1999 would have revealed the existence of a prior mortgage, because the Fogartys face an insurmountable obstacle to reversal of the summary judgment on the fraud count arising from their failure to contest Confederate Money, Southworth, and McGill's contention in their brief to this Court that constructive notice of an alleged fraud can be furnished by public records.
Confederate Money, Southworth, and McGill contended in the trial court, and do so in this Court, that they were entitled to a summary judgment because the constructive notice furnished by the public records started the running of the statutory limitations period with respect to the alleged misrepresentation that the conveyance of the property by the McPherson Group was "free and clear."
The Fogartys failed to address this constructive-notice issue at all in their initial brief, responding to it for the first time in their reply brief. Rule 28(a)(10), Ala. R.App. P., provides that an appellant's brief shall contain "[a]n argument containing *Page 1232 
the contentions of the appellant/petitioner with respect tothe issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on." (Emphasis added.) It is true that constructive notice from public records that the property could not be conveyed "free and clear" was a basis the movants relied on in support of their motions for a summary judgment. When an appellant confronts an issue below that the appellee contends warrants a judgment in its favor and the trial court's order does not specify a basis for its ruling, the omission of any argument on appeal as to that issue in the appellant's principal brief constitutes a waiver with respect to the issue. If the rule were otherwise, an appellant could "sandbag"[3] an appellee by withholding an argument on an issue until the reply brief, thereby depriving the appellee of the opportunity to respond. SeeLloyd Noland Hosp. v. Durham, 906 So.2d 157, 173
(Ala. 2005) ("It is a well-established principle of appellate review that we will not consider an issue not raised in an appellant's initial brief, but raised only in the reply brief.") (citing Birmingham Bd. of Educ. v. Boyd, 877 So.2d 592
(Ala. 2003), and Sanders v. Smitherman, 776 So.2d 68, 73
(Ala. 2000)). We therefore affirm the summary judgment on the fraud count insofar as it is based on the alleged misrepresentations concerning the conveyance of the property as "free and clear," because the Fogartys have waived the right to assert error with respect to that issue.
We have determined that the statute of limitations bars the "predicate act" of fraud, i.e., the misrepresentation that the property would be conveyed "free and clear"; the Fogartys next ask this Court to reverse the summary judgment insofar as it dismisses their claims relating to misrepresentations occurring after the "predicate act" of fraud. The subsequent misrepresentations include references to a December 19, 2000, "Hotel Progress Memorandum"; a March 15, 2001, "Hotel Progress Memorandum"; and a misrepresentation dealing with the percentage of their interest in Confederate Money dated April 17, 2002. The other fraudulent activities the Fogartys allege that occurred within two years of the filing of their action relate to allegations in the complaint having to do with the suppression of information from them. These instances and activities are merely summarized in the statement of facts in the Fogartys' principal brief to this Court and are supported only by citations to their complaint.
The Fogartys attempt to bolster their misrepresentation allegations with two affidavits, one from Jane Fogarty and one from Charles Fogarty. Jane Fogarty's affidavit was attached to the Fogartys' response to the motion for summary judgment, but it did not specifically enumerate any instances of fraud or misrepresentation. Charles Fogarty's affidavit, on the other hand, was submitted after the May 14, 2004, hearing, when the trial court invited further briefs, and it dealt exclusively with the misrepresentations concerning the "free and clear" conveyance of the property, not misrepresentations occurring after the "predicate act" of fraud. Confederate Money, Southworth, and McGill moved to strike the affidavit on the grounds both that it exceeded the scope of *Page 1233 
the trial court's invitation and that it was not filed at least two days before the hearing as required by Rule 56(c)(2). The trial court never ruled on the motion to strike; we therefore assume that it considered the affidavit. See Hannah v. Gregg,Bland Berry, Inc., 840 So.2d 839, 850 (Ala. 2002) (holding that where "there is no indication in the record that the court excluded [an untimely affidavit], we must assume that the trial court considered [it] when it ruled on [the] motion for a summary judgment") (citing Travis v. Ziter,681 So.2d 1348, 1351 (Ala. 1996)).
Nevertheless, Charles Fogarty's affidavit deals only with the previously addressed bundle of misrepresentations concerning the McPherson Group's conveyance of the property as "free and clear" in exchange for a 51% interest in Confederate Money. It does not offer evidence of any misrepresentations allegedly occurring after that conveyance. Consequently, with respect to claims based upon misrepresentations occurring after this "predicate act" of fraud, the Fogartys have offered nothing in opposition to the motions for a summary judgment beyond the bare allegations of their complaint. "Relying upon Rule 56(e), this Court has stilted frequently that a nonmovant, in opposing a motion for a summary judgment, cannot merely rely on the allegations in the complaint." Ex parte Quinlan, 922 So.2d 914, 916 (Ala. 2005). Consequently, we cannot consider the effect, if any, of the misrepresentations occurring after what we have described as the "predicate act," and the trial court's summary judgment as to the other aspects of the fraud count is therefore due to the affirmed.
 C. Summary Judgment on the Remaining Counts
In their brief on appeal, the Fogartys ask this Court to "clarif[y] that at most, the Trial Court granted a partial summary judgment on the fraud count only." The Fogartys point to the different statutes of limitations that govern several of their other claims. Confederate Money, Southworth, and McGill contend that the summary judgment on the fraud count bars all other counts, because Jane Fogarty stated in her deposition that she "wouldn't be here today" if the land had been conveyed "free and clear." Confederate Money, Southworth, and McGill argue that, based on this statement, because the "predicate act" of fraud is barred, all other counts in the Fogartys' complaint are likewise barred. Nowhere in their briefs do Confederate Money, Southworth, or McGill cite any law, statutory or otherwise, or any other authority for the proposition that a summary judgment on one count based on the statute of limitations for that count necessitates a summary judgment on the remaining counts, some subject to longer statutes of limitations.
Furthermore, Confederate Money, Southworth, and McGill did not deal so expansively with the scope of their summary-judgment motions when they were challenged by the Fogartys in the trial court. Specifically, in their brief in response to the motions for a summary judgment, the Fogartys stated that the "[m]ovants request that partial summary judgment be entered on oneaspect of one of the fourteen counts . . . as to three of the . . . Defendants." (Emphasis added.) Confederate Money, Southworth, and McGill responded that, because "this alleged misrepresentation cannot be the basis for a viable fraudaction since the two-year statute of limitations ran out long ago," the Fogartys' "theory of multiple independentfraudulent acts/misrepresentations disintegrates into nothing more than an attempted end run around the *Page 1234 
statute of limitations." (Emphasis added.) Absent from the response is any contention that if a summary judgment was appropriate as to the fraud count a summary judgment was appropriate as to all counts. In the trial court, Confederate Money, Southworth, and McGill did not refute the Fogartys' efforts to limit the scope of the summary judgment to the fraud count; they merely argued that the statute of limitations bars all aspects of the fraud count.
The trial court, however, entered a summary judgment in favor of Confederate Money, Southworth, and McGill on all counts, giving the movants more than they actually sought in their motion. Before this Court, Confederate Money, Southworth, and McGill have modified their argument to support that result, claiming that "[b]ecause all of the Fogartys' claims were grounded in Confederate Money's alleged acts of fraud," the trial court properly "dismissed all of the claims against Confederate Money, not just the fraud count." The Fogartys were entitled to rely on the description of the scope of the summary-judgment motions that Confederate Money, Southworth, and McGill gave in the trial court, i.e., they sought a summary judgment only on the fraud count.
Even if we were to treat the summary-judgment motions as comprehensive, as previously noted Confederate Money, Southworth, and McGill have not provided us with any authority to support the view that successful defense of one count based upon a shorter statute of limitations justifies the dismissal of all counts arising from the same transaction, some of which are governed by longer statutes of limitations. Such a proposition of law, if we were to accept it, would surely constitute an affirmative defense as to which Confederate Money, Southworth, and McGill would bear the burden of proof, though we do not reach the merits of the validity of such a defense here. See Buist v. Time DomainCorp., 926 So.2d 290, 293 (Ala. 2005) ("A defendant bears the burden of proving an affirmative defense."). Before the trial court, Confederate Money, Southworth, and McGill never produced any credible evidence in support of this theory. This Court stated in Payton v. Monsanto Co., 801 So.2d 829, 834
(Ala. 2001), regarding the movant's burden of production of evidence on a motion for a summary judgment: "`The manner in which the movant's burden of production is met depends upon which party has the burden of proof . . . at trial. If the movanthas the burden of proof at trial, the movant must support hismotion with credible evidence.'" (Quoting Ex parteGeneral Motors Corp., 769 So.2d 903, 909 (Ala. 1999).) Clearly, Confederate Money, Southworth, and McGill would have had the burden of proving this affirmative defense at trial, and they thus had it on the motions for a summary judgment.
The only evidence presented in support of the motions for a summary judgment related to the statute of limitations on the Fogartys' fraud count. As a result, Confederate Money, Southworth, and McGill never satisfied their obligation to make a prima facie showing that they were entitled to a summary judgment on all of the Fogartys' counts. Ex parte GeneralMotors Corp., 769 So.2d at 909. On the record before this Court, Confederate Money, Southworth, and McGill never successfully shifted the burden to the Fogartys to prove that the statute of limitations for the fraud count did not bar those remaining 13 counts. See Lacy v. Mini Warehouse World,835 So.2d 154, 157 (Ala. 2002) (Lyons, J., concurring specially). Indeed, *Page 1235 
their failure to do so is entirely consistent with the narrower scope of the summary-judgment motions, as presented to the trial court. Because Confederate Money, Southworth, and McGill failed to meet their burden of production in support of a summary judgment on the remaining 13 counts, the trial court erred in entering a summary judgment in favor of Confederate Money, Southworth, and McGill and against the Fogartys on all counts.
 IV. Conclusion
The summary judgment in favor of Confederate Money, Southworth, and McGill on the fraud count of the complaint is affirmed. In all other respects, the summary judgment is reversed, and the cause is remanded for farther proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NABERS, C.J., and LYONS, WOODALL, SMITH, and PARKER, JJ., concur.
[1] For a discussion of the unauthorized-practice-of-law claims, see Fogarty v. Parker, Poe, Adams, BernsteinL.L.P., [Ms. 1040335, Aug. 18, 2006] ___ So.2d ___ (Ala. 2006).
[2] Although the Fogartys refer only to the representation that the land would be conveyed "free and clear" as the "predicate act" of fraud, we consider all the representations associated with the conveyance of the land as a unitary aspect of this fraud claim; therefore, we include all of them in our reference to Confederate Money's "predicate act" of fraud.
[3] "Sandbag" is defined as "to conceal or misrepresent one's true position, potential, or intent esp. in order to take advantage of." Merriam-Webster's Collegiate Dictionary
1100 (11th ed.2003).